GREER *v.* CITY OF TEXARKANA.

4-6292                    147 S. W. 2d 1004

Opinion delivered February 24, 1941.

—PAGE 1041]

*Louis Josephs* and *Frank S. Quinn,* for appellant.

*A. G. Sanderson, Jr., Willis B. Smith, Ben E. Carter, J. E. Gaughan* and *Pat Mehaffy,* for appellees.

SMITH, J.   Appellant Greer is the owner of a tri-angular tract of land or city lot at the south end of College street in the city of Texarkana where that street connects with Dudley avenue.   These streets are a part of U. S. highway 71. College street crosses the yards and tracks of the Missouri Pacific Railroad Company over ·a viaduct,. and crosses the tracks of the St. Louis Southwestern Railway Company, commonly known as the Cotton Belt, at a grade crossing.   It is proposed to re-route this traffic in a somewhat circuitous manner, not necessary here to state, which will eliminate the grade crossing over the Cotton Belt tracks, and will involve the removal of the viaduct over the Missouri Pacific tracks.

Appellant filed a suit against the city of Texarkana and these railroads in which he seeks to enjoin this change of the route of· 71, and he prays, in the alternative, that if denied this relief he be compensated for the diminution in the value of his lot which will result from this change.

An examination of the maps filed in this case, and a consideration of the testimony heard at the trial from which is this appeal, fully sustain the finding of the

court below that public convenience and safety require that the proposed change be made; but it is equally certain that the value of appellant's property will be depreciated if the change is made.

The court below dismissed the complaint as being without equity, and this appeal is from that decree.

To effectuate this change the council of the city of Texarkana, which is a city of the first class, passed an ordinance, No. B-623, entitled, "An ordinance to vacate that portion of College street in the city of Texarkana, Arkansas, within the boundaries of the St. Louis Southwestern Railway Company's property and to close said street crossing over the St. Louis Southwestern Railway Company's tracks."

Section 2 of this ordinance provides that it shall not become effective until a new viaduct over the Missouri Pacific tracks at a different location shall have been erected and an underpass under the Cotton Belt tracks shall have been constructed where there is now a surface crossing.

The proposed plan involves the closing of College street at the point where it crosses the Missouri Pacific tracks, as the viaduct over which traffic now passes is to be removed.

Section 9944, Pope's Digest, confers this power upon the city; but it may not be exercised if act 145 of the Acts of 1939, p. 344, is invalid.

It appears that the 1907 General Assembly passed an act requiring the St. Louis, Iron Mountain & Southern Railway Company (now Missouri Pacific Railroad Company) to build a viaduct over its tracks where they are crossed by College street, (act 261, Acts of 1907, p. 606). This act ordered the railroad company to construct the framework of the viaduct, and the city to maintain its floor. In 1923, another act was passed requiring the railroad company to maintain the whole structure. (Act 394, Special Acts 1923, p. 840.) It is now proposed to remove this structure, and the effect of that action will be to close that part of College street which crosses the

yards and tracks of the Missouri Pacific Railroad Company. It is essential that the city, through its council, direct that action, and it is stated in the briefs that this has been done by an appropriate ordinance. Notwithstanding this fact, there are the acts of the General Assembly above mentioned which require the railroad company to maintain the viaduct the removal of which is commanded by the city ordinance.

The proposed change in the route of highway No. 71 has been under consideration by both the state and federal highway authorities for several years, and the purpose of the city ordinance is to effectuate the plan finally approved by these agencies. To that end there was passed, at the 1939 session of the General Assembly, an act, No. 145, entitled, "An act to repeal act No. 261 of the General Assembly of the State of Arkansas for the year 1907 and act No. 394 of the General Assembly of the State of Arkansas for the year 1923, and for other purposes." Acts 1939, p. 344. These are the acts referred to which required the railroad company to erect and maintain the viaduct.

The preamble to act 145 recites that "the United States Government has agreed to construct a grade separation project in the city of Texarkana, Arkansas, consisting of crossing the Missouri Pacific Railroad tracks by an overhead viaduct, the Nix Creek bottoms by fills and bridges, and the St. Louis Southwestern Railway Company tracks by an underpass upon the following described tract of land in and adjacent to the city of Texarkana, Arkansas, to-wit:" There follows a description of the land above referred to, and the recital that upon the completion of the grade separation project "public necessity will not require a continuance of the present viaduct erected under the provisions of act No. 261 of the acts of the General Assembly for the year 1907." It is then enacted that act 261 of 1907 and act 394 of the 1923 session of the General Assembly be repealed, the repealing act to be effective "upon the completion and opening for traffic of a new viaduct over the tracks of the Missouri Pacific Railroad and an underpass under

the tracks of the St. Louis Southwestern Railway, as hereinabove recited.''

It is insisted that act 145 is unconstitutional, as in conflict with § 24 of art. 5 of the constitution, prohibiting the vacating of roads, streets or alleys by special act, and also with amendment No. 14, prohibiting the enactment of local or special legislation. We do not think act 145 is violative of either of these provisions of the constitution.

Section 24 of art. 5 of the constitution provides that the General Assembly shall not pass any local or special law vacating roads, streets or alleys. Amendment No. 14 provides that the General Assembly shall not pass any local or special act, but provides that the amendment shall not prohibit the repeal of local or special acts.

We think the effect of act 145 is to repeal the two prior special acts. It relieves the railroad company of a duty previously imposed. If act 145 is upheld, it leaves an absence of legislation on the part of the state with reference to the viaduct. Now, section 2 of act 145, does allow the railroad company to retain the salvage from the dismantled viaduct; but this is a declaration of what the law would be if it had not been so enacted. It was the railroad company's viaduct, erected and maintained under legislative enactment, at its own cost, and when the railroad company was relieved of the duty of maintenance, it was allowed to salvage the value of its own property. Section 2 further provides that after the removal of the viaduct the street crossing over the railroad tracks shall be closed. We think this statement, read in the light of the history of this legislation, means that the street shall be closed so far as the duty subsists on the part of the railroad company to maintain facilities for crossing the railroad tracks and yards. If, however, it may be said that § 2 of act 145 is violative of § 24 of art. 5 in that it vacates a street, we think it may also be said that act 145 is severable in its provisions, and that this part of act 145 may be stricken and the remainder allowed to stand. The obvious purpose of the legislation was to place the city of Texarkana in position to deal with the situation with reference to chang-

ing the route of 71 unhampered by the acts of 1907 and 1923, which required the maintenance of the viaduct. The city has the power under § 9944, Pope's Digest, to find, and to enact, that the portion of College street now crossed by the viaduct is no longer required for corporate purposes; but it could not exercise this power so long as a law of the state required the maintenance of the viaduct for the accommodation of the traffic. In other words, act 145 permits the city to deal with its streets under the powers conferred by § 9944, Pope's Digest, unrestrained and unrestricted by the acts of 1907 and 1923.

Appellant insists that the effect of the changing of highway No. 71 is to destroy the value of his property, which constitutes the taking of his property without compensation. But the case of *Tuggle* v. *Tribble,* 177 Ark. 296, 6 S. W. 2d 312, defines the attitude of this court on such questions. In that case the county court changed the location of a county road near the city of Hot Springs. Tuggle owned land on the old highway, and he appealed from the order of the county court making the change, and he appealed to this court from the judgment of the circuit court affirming the judgment of the county court. It was held on the appeal that the county court had the right to change the road, although the change subjected Tuggle to some inconvenience, and depreciated the value of his property; but the court reserved the question, "whether an action for damages would lie where a property owner is injured by being entirely cut off from a public road so that it might be said that his property was taken or damaged for public use, within the meaning of our constitution, without providing adequate compensation therefor."

The question there reserved does not arise here. Appellant has not been deprived of his means of ingress and egress, as Dudley avenue, on which his property is located, remains unaffected by the proposed change. Unaffected also is Jackson street, running into Dudley avenue at appellant's corner. Appellant's damage, as found by the court below, results from the diversion of the traffic; but this was not a recoverable element of

■■■■■■■■■■■

damage. The case of *Hempstead County* v. *Huddleston,* 182 Ark. 276, 31 S. W. 2d 300, definitely decides that it is not. The subject is extensively annotated in the case of *Blanding* v. *City of Las Vegas,* 52 Nev. 52, 280 Pac. 644, 68 A. L. R. 1273.

The appeal appears to be without merit, and the decree of the court below is, therefore, affirmed.