BARBEE v. CARPENTER.

5-394                                    267 S. W. 2d 768

Opinion delivered May 10, 1954.

*Vol T. Lindsey,* for appellant.

*Eugene Coffelt,* for appellee.

GEORGE ROSE SMITH, J. This dispute involves the appellees' right to close part of Second Street in the city of Siloam Springs. The appellees' home is situated at the northwest corner of the intersection of Second and College Streets and fronts on College to the east. The appellants' home, also facing College, is just across Second Street, at the southwest corner of the intersection. This suit results from the action of the appellees in placing a fence across Second Street along the line of its intersection with College. The appellants' complaint asks that the appellees be required to remove the fence. The defense is that neither the public nor the plaintiffs have an easement in this part of Second Street. The chancellor sustained this defense, holding that the appellees now own this part of Second Street in fee.

We agree that the public easement in Second Street, in the block between College and Maple to the west, has been extinguished. This addition to the city was platted in 1881, and of course the subsequent sale of lots by reference to the plat confirmed the dedication of Second Street and other thoroughfares. *Butler* v. *Emerson,* 211 Ark. 707, 202 S. W. 2d 599. But there is a bluff across what would be Second Street between College and Maple, and for that reason Second has never been sufficiently improved to permit vehicles to travel along this entire block. Instead, Second has been a cul-de-sac that extends west from College to a point only slightly past the houses now owned by these litigants.

In 1911 E. J. Hewitt, who then owned the property on both sides of this segment of Second Street, filed a

petition with the city council, asking that the street be closed. As consideration for this action Hewitt offered to construct certain concrete steps at the north end of College, for public use. By resolution the council accepted this offer, and in the same year the city conveyed this part of Second Street to Hewitt. His title has since passed by mesne conveyances to the appellees.

It appears that both Hewitt's petition and the council's resolution have been lost or destroyed. There is, however, a familiar presumption in favor of the validity of the acts of public officers, and upon that basis the chancellor may reasonably have assumed the city's transaction with Hewitt to have been valid. Since 1897 cities of the second class have been authorized to vacate such portions of public streets as may not for the time being be required for corporate purposes. Ark. Stats. 1947, § 19-2305. We have held that a similar statute (§ 19-2304), applicable to cities of the first class, empowers a city to find and to enact that a portion of a street is no longer required for public purposes. *Greer* v. *City of Texarkana,* 201 Ark. 1041, 147 S. W. 2d 1004.

In 1911 the city council of Siloam Springs could well have concluded that, owing to the bluff between College and Maple Streets, that particular segment of Second Street was not needed for corporate purposes. Upon such a determination the council was justified in authorizing the conveyance to Hewitt. Of course the power to vacate a street does not ordinarily include the power to convey it to one person; but in 1911 Hewitt owned all the land abutting this part of Second Street, and for that reason the direct conveyance to Hewitt achieved the same result that would have been accomplished by a declaration that the street had been vacated, with title to vest in the abutting owners. We think it fair to presume that the council's action, taken more than forty years ago, operated to extinguish the public easement in that part of Second Street that lies between College and Maple.

On the other hand, a decided preponderance of the testimony supports the appellants' assertion of a private

easement which enables them to use a portion of the vacated street as a means of access from College Street to their back yard. The appellees insist that the traveled part of what was originally Second Street has for many years been in fact a mere driveway leading to the back door of the appellees' house. But the proof shows pretty clearly that this driveway has been used for twenty years or more as a means of ingress to the appellants' property as well. The appellants themselves have not owned a car and have therefore used the driveway only occasionally, as when loading an automobile for fishing trips and the like. But for at least two decades tradesmen have used the driveway regularly — almost daily—for deliveries of ice, coal, and groceries to the appellants' back door. This proof is not seriously disputed; indeed, it was the constant traffic along the driveway that led the appellees to erect the fence now complained of.

Thus the situation is that for some twenty years the driveway along the south edge of the appellees' property has been utilized by business visitors for ingress to the appellants' back yard. It is plain enough that this continual travel over the appellees' property—travel that led only to the appellants' back door—did not create a public easement such as a street or an alley. But it is equally plain that this long continued use of the driveway, even though exercised mainly by third persons, inured to the benefit of the appellants and resulted after seven years in the creation of a private easement. In these circumstances the user is referable to the premises being visited and eventually creates an easement appurtenant to that property. *Jean* v. *Arseneault,* 85 N. H. 72, 153 A. 819; *Wilson* v. *Waters,* 192 Md. 221, 64 A. 2d 135.

The most difficult question in the case is whether the use of the way in dispute was permissive or adverse. It would evidently not be correct to say that a private easement invariably results whenever a person, in a spirit of neighborliness, permits others to use his driveway for seven years or more. A mere user, even though continued for the statutory period, does not ripen

into a prescriptive right unless the circumstances are such as to put the owner of the servient estate on notice that the way is being used adversely under a claim of right. *Clay* v. *Penzel*, 79 Ark. 5, 94 S. W. 705; *Bridwell* v. *Ark. P. & L. Co.*, 191 Ark. 227, 85 S. W. 2d 712. In the case at bar, however, there are several reasons for concluding that the travel across the appellees' land was not merely permissive.

To begin with, the appellees' property was occupied. We have recently stressed this fact as one of the factors tending to put the landowner on notice that the user is under a claim of right. *Cupp* v. *Light Gin Ass'n, ante* page 565, 267 S. W. 2d 516. Second, this was the only means of ingress to the appellants' back yard, for there is a hedge along the sidewalk in front of their home. Hence the driveway served not simply as an alternative route of convenience, as is the case when pedestrians cut across a vacant corner lot; instead, it was the only available path to the appellants' back door.

Third, the metes and bounds description in the city's 1911 deed to Hewitt was defective, the defect having eventually been remedied by a correction deed executed by the city in 1940. Therefore it was not until 1940 that the owner of what is now the appellees' property was legally in a position to protest the use of his driveway. When that owner sought and obtained a correction deed he necessarily recognized the flaw in his title, and he must be charged with the knowledge that the preceding use of his property could properly have been under a claim of right. By arming himself with the correction deed the owner undertook to convert into private property what had been a public street since 1881. It is fair to cast upon him the duty of taking some action to warn his neighbors that in the future no one was to have the right to cross the property. No such action is shown to have been taken; on the contrary, the adverse use of the driveway was allowed to continue until shortly before this suit was filed in 1951. This delay of more than ten years precludes the appellees from obstructing

the right-of-way which the appellants have acquired by prescription.

Reversed.