KANSAS CITY So. RY. CO. *v.* CITY OF FT. SMITH.

5-1420                                         309 S. W. 2d 315

Opinion delivered February 3, 1958.

*Hardin, Barton, Hardin & Garner,* for appellant.

*Pettus A. Kincannon,* City Attorney, and *Chas. A. Beasley,* for appellee.

GEORGE ROSE SMITH, J. The Kansas City Southern Railway Company's passenger station, freight depot, and allied facilities formerly occupied an area of three blocks, lying contiguously in a straight line, in the city of Fort Smith. In authorizing the original construction of the railroad terminal in 1911, the city adopted ordinances vacating the alleys in these three blocks and the two streets crossing this rectangular area. Floods destroyed the carrier's branch line into Fort Smith in 1943, and the company discontinued regular passenger rail service into the city, substituting a shuttle bus service between the city and the company's main line in Oklahoma. Later on the railway company sold or leased various parts of its terminal facilities to its codefendants in this case.

This action in ejectment was brought by the city in 1956, to recover possession of, and reopen, the streets and alleys within the three-block area in question. It is the city's theory that it originally owned these streets and alleys in fee simple and vacated them only on condition

that the railroad company should continue to furnish the community with passenger service by rail. Upon this premise the city contends that the company, by abandoning that type of service in 1943, lost its right to occupy the streets and alleys. This theory is disputed by the appellants, who insist that the public ways were vacated unconditionally and can be reacquired only by condemnation.

The case was tried without a jury, upon an agreed statement of facts. In the main the court sustained the city's position, awarding it possession of the streets and alleys. Compensation to the defendants was allowed only with respect to two structures that had been erected in recent years pursuant to building permits issued by the municipality.

The city's asserted right to reopen these streets and alleys is based in part upon its contention that it has all along owned the fee simple title to these public ways, instead of a mere easement in them. Upon this assumption counsel present a rather involved argument to show that the vacation of the streets and alleys did not vest the title thereto in the railroad company, which at the time owned all the abutting property.

The simplest answer to this argument is that the city's claim to the fee is not well founded. The pertinent facts are stipulated. A substantial part of Fort Smith was formerly a federal military reservation. Pursuant to an act of Congress most of the reservation was platted as lots and blocks and was conveyed by the United States to the city. Two separate patents were issued by the government. The first, executed March 12, 1885, conveyed to the city about 115 platted blocks (including those now in question), in trust to be sold for the benefit of the public schools. The second patent, executed July 29, 1885, granted five additional blocks to the city for its own use and also "the streets and alleys and avenues for the use of the public." In obedience to its trust the city, during the succeeding ten years, sold all the lots conveyed by the first patent and executed

deeds describing the various parcels by their lot and block numbers.

We do not agree with counsel's contention that Congress, by directing the issuance of two separate patents, evidenced an intention that the streets and alleys should be forever held by the city in fee. The federal act indicates clearly that two patents were resorted to because part of the property was being conveyed to the city in trust for the schools and part to the city for its own use. Presumably the streets, alleys, and avenues were not mentioned in the first patent for the reason that the city was not expected to offer them at public sale for the benefit of the schools.

Absent anything establishing a contrary intention on the part of the government, the property interest created by the conveyances to the city should be determined by state law. *United States* v. *Illinois Central R. Co.,* 154 U. S. 225, 14 S. Ct. 1015, 38 L. Ed. 971. By our law the grants to the city, describing the land by reference to the plat, contemplated the existence of a public easement only in the streets and alleys, and that easement alone was reserved when the city in turn sold the lots to private owners. *Reichert* v. *St. L. & S. F. Ry.,* 51 Ark. 491, 11 S. W. 696, 5 L. R. A. 183; *Lincoln* v. *McGehee Hotel Co.,* 181 Ark. 1117, 29 S. W. 2d 668.

Thus the public had only an easement in these ways when the railroad company, in about 1910, purchased the three blocks in question and undertook the construction of a terminal. The city co-operated in the proposal by adopting, in 1910 and 1911, ordinances vacating the streets and alleys now in controversy. It cannot be doubted that Fort Smith, as a city of the first class, had the power to take this action. Ark. Stats. 1947, § 19-2304; *Greer* v. *City of Texarkana,* 201 Ark. 1041, 147 S. W. 2d 1004; *Barbee* v. *Carpenter,* 223 Ark. 660, 267 S. W. 2d 768.

The remaining question is whether these public ways were vacated absolutely or only as long as passenger service should be maintained. We find next to nothing in the ordinances to suggest a conditional vacation. The

1910 enactment, to which the one of 1911 is similar, declares unequivocally that the streets "are hereby vacated and closed for the purpose of allowing the Kansas City Southern Railway Company to build its tracks, train sheds and platforms in a continuous manner over and across" the two streets in dispute. Neither ordinance contains language of the kind ordinarily employed for the imposition of a condition. That the city gave its reason for closing the streets is easily understandable, but this expression of purpose did not by itself create a determinable estate. *Lynch* v. *Cypert,* 227 Ark. 907, 302 S. W. 2d 284.

If the issue were open to serious doubt, the fact that the carrier gave value for the city's action, instead of receiving a gratuity, would tend to negative the existence of a condition. See *Davis* v. *St. Joe School Dist.,* 225 Ark. 700, 284 S. W. 2d 635. The ordinances required the railroad company to spend at least $100,000 in the construction of a passenger station; in fact the company's total investment exceeds $300,000. The city also required the company to purchase neighboring land and provide at its own expense a paved street that represents to some extent a substitute route for the traveling public. All these matters confirm the view that both the city and the carrier understood that the streets and alleys were being permanently closed. We conclude that the appellants are correct in their insistence that the city can achieve its present purpose only by the exercise of the power of eminent domain.

Reversed and dismissed.