LeCroy v. Sigman.

4-7751                          191 S. W. 2d 461

Opinion delivered December 10, 1945.

Rehearing denied January 21, 1946.

470

*C. T. Cotham* and *Curtis L. Ridgway,* for appellant.

*A. T. Davies, Bessie N. Florence* and *Scott Wood,* for appellee.

HOLT, J. J. K. LeCroy, September 5, 1940, brought suit against Elzie W. Sigman to restrain Sigman from closing an alleged alley fronting approximately 25 feet on Olive Street and extending south approximately 80 feet, and widening to about 30 or 35 feet at its south end, along the east side of that portion of lot 6, block 56, in Hot Springs, owned by Sigman. That part of lot 6 which Sigman owned was 80 feet wide fronting Central Avenue and 140 feet on Olive Street which included the alley way in controversy.

Appellant, B. L. Riggs, owned the remaining 54 feet of lot 6 fronting on Olive Street on which was erected a stone garage extending the full length of the alleged alley way, the west wall of said garage constituting what was claimed to be the east boundary of said alley. The

south end of the alley is inclosed by a fence and just west of this fence is a 12 foot gate which is on the line of lot 5, owned by J. K. LeCroy. Lot 5 adjoins lot 6 on the south and fronts 70 feet on Central Avenue.

J. K. LeCroy alleged in his complaint in substance that he and other property owners bordering said alleged alley, together with the public, had used it for more than seven years openly and adversely prior to the filing of this suit and that said usage has ripened into an easement in said alley as a means of ingress and egress.

Sigman's answer was a general denial and contained the further defense that the use of the alleged alley was permissive and not adverse and that appellants acquired no rights therein. A temporary restraining order was granted September 5, 1940. While this temporary order was in effect, both J. K. LeCroy and Elzie W. Sigman died sometime in 1943, and thereafter on May 16, 1944, the cause was revived in the name of Rosa E. LeCroy, widow of J. K. LeCroy, as plaintiff and owner below and one of the appellants here, and Mary I. Sigman, widow of Elzie W. Sigman, defendant and owner below and appellee here. May 16, 1944, Mary I. Sigman, appellee, filed motion to vacate the temporary injunction, *supra*, granted September 5, 1940.

June 27, 1944, appellant, Byron L. Riggs, intervened and alleged that on November 27, 1943, he purchased the stone garage, *supra*, fronting 54 feet on Olive Street and in effect adopted all allegations set out in the original complaint filed by J. K. LeCroy, and say appellants, Rosa E. LeCroy and Byron L. Riggs: "Both claim a legal right to the use of the alley because it has been open and dedicated to the public for a period of time ranging from at least seven years up to as much as forty years. It is not claimed and has never been claimed by either plaintiff or intervener that they have title to this alley through deed, but rather they claim the right to the use of same by prescription and by adverse possession for a period of time required by law to perfect their

right to an easement over and through said alley or way."

On the same day that this intervention was filed, appellant, Rosa E. LeCroy, filed an amended complaint in which she alleged that in June, 1942, about two years subsequent to the granting of the temporary injunction, *supra,* her husband, Elzie W. Sigman, and J. K. LeCroy made a settlement of the west boundary line of the alleged alley which was binding on appellee.

Appellee's answer to this amended complaint was a general denial.

The cause was heard by the trial court June 27, 1944. The testimony presented by the parties was voluminous. It covers approximately 274 pages of a record containing 323 pages. At the conclusion of the trial, the court made the following findings of fact: "(1) Prior to the fire of 1905, the owners of the lots which are now owned by Rosa E. LeCroy and by Byron L. Riggs, respectively, did not claim or use a way across the lot that is now owned by the defendant, Mary I. Sigman. (2) In February, 1905, there was a general conflagration in the area of the properties in controversy, which burned all of the improvements in the entire block where said property is situated. After the 1905 fire, the lot which is now owned by the defendant was purchased by the Central Methodist Church South, and a church building was erected thereon, which covered nearly the entire area of the lot which now is owned by Mrs. Sigman. There was another general fire in that area, which occurred on the 5th day of September, 1913, which burned all of the buildings in block 56. (3) The east wall of the church was on the space that the plaintiff and intervener are now claiming as an alley. (4) After the said second fire, a filling station was erected on the said property that is now owned by the defendant. The building on the plaintiff's property was erected about the year 1927. (5) From the time that the erection of the building on the plaintiff's property was started until the present time, the plaintiff, her tenants, the plaintiff's customers, and customers of her

tenants have driven across all of the unoccupied portion of the lot that is now owned by the defendant. (6) The said use of the defendant's lot was not confined to the fifteen feet at the east end thereof, but included the entire unused portion of the defendant's lot. (7) Those who used the unoccupied portion of the defendant's property drove across it to the rear end of the plaintiff's building in the most direct and convenient way. (8) Prior to the said use of the defendant's lot, which began about 1927, the owner of the lot which now belongs to the plaintiff did not use or claim any way across the lot which now belongs to the defendant. (9) Prior to the 1905 fire, Henry Fellheimer and his tenants used a private way across the lot which then belonged to Henry Fellheimer's wife, Fannie Fellheimer, which way ran from Olive Street to the rear of Henry Fellheimer's property, part of Henry Fellheimer's said property being the lot that is now owned by the plaintiff. The way that was used by Mr. Fellheimer and his tenants was east of the lot that is now owned by the defendant. (10) The owners of the lot that is now owned by the defendant never at any time objected to having the LeCroys and their tenants drive across the unused portion of their lot, and there was no notice that the LeCroys or their tenants were claiming the right to drive across the defendant's lot. (11) The tenants of the lot that is now owned by the intervener also used the unoccupied portion of the Sigman lot for the purpose of working on trucks, tractors, etc., but no notice was given to Mr. or Mrs. Sigman that such use of the back end of their lot was under claim of right, or that it was adverse to the defendant's title. (12) The deed from Henry Fellheimer, under which the LeCroys claim title, did not mention any way or alley as being appurtenant to the lot that was conveyed. This deed did not mention any way or alley at all. (13) In all of the deeds that are in the defendant's chain of title, the property was described by metes and bounds, which included the land over which the plaintiff is claiming a right of way. All of these deeds were general warranty deeds which did not except any way or easement, and did not

mention any burden on the property whatever. (14) The defendant's property was under lease down to the year 1934, and this suit was filed in 1940. (15) There was never any public alley, way, or easement at the point where the plaintiffs are claiming a right of way. The Sanborn map of block 56 and the picture of the church that were put in evidence both show that there was no alley where plaintiff is claiming an alley to be. The Mitchell map of the city of Hot Springs which was introduced in evidence shows that there was no alley there."

Thereafter, on January 23, 1945, a decree was entered holding that neither of the appellants "owned any right of way or easement in said land; that such use was permissive and not adverse; that such did not give to the plaintiff, Rosa E. LeCroy, or the original plaintiff, J. K. LeCroy, or to the intervener or his grantor any right of way or easement in the defendant's land; that the defendant and the original defendant had the right to put an end to such use," and dismissed the complaint of appellant, Rosa E. LeCroy, and the intervention of B. L. Riggs for want of equity, and dissolved and canceled the temporary restraining order, *supra*.

This appeal followed.

In short, the issues presented are: (1) Was the use of the alleged alley in question permissive only, as contended by appellee, or was its use "adverse, hostile and as a matter of right" as contended by appellants? (2) Was there an agreement and settlement of the west boundary line of the alley in the lifetime of the original parties to this litigation, J. K. LeCroy and Elzie W. Sigman, and is appellee estopped to deny appellants' claim of an easement?

Both issues turn on a question of fact. While we try the case *de novo*, we must affirm unless it appears that the findings and decree of the trial court were against the preponderance of the testimony.

(1) On the first proposition, it could serve no useful purpose, and we do not attempt, to detail the testi-

mony. We have reviewed the testimony and are unable to say that the preponderance thereof does not support the decree. The effect of the testimony as a whole, we think, supports the trial court's findings upon which the decree was based, and that is that appellants' use was permissive and not adverse.

The facts here disclose that block 56 is approximately 420 feet from north to south, that this alley fronting on Olive Street extends south approximately 80 feet where it comes to a dead end. It has never been paved and is not inclosed. The great preponderance of the testimony, if not the undisputed testimony, is that this alley was never platted or dedicated to the city for public use and the city has never claimed it. Appellants make no claim to it by grant or deed. It is conceded that appellee's deed covers this alleged alley. The alley is of irregular width. It varies from 20 to more than 30 feet. There is no evidence that the owners of adjoining buildings set their buildings back or made any allowance for this alleged alley. While it is true that the evidence shows that the employees of appellant, Riggs, were using this alley way as a matter of convenience for repairing tractors and trucks and the occupants of other business houses facing Central Avenue drove over it and through a 12 foot gate west of the south end of the alley into the rear of the LeCroy lot, the preponderance of the evidence shows that such use, though for more than seven years, was not under any claim of right or adverse to the title of appellee nor such as would put appellee on notice that such use of the way was under such claim and hostile to her ownership.

In these circumstances, we think that the rule announced in the case of *Boullioun* v. *Constantine,* 186 Ark. 625, 54 S. W. 2d 986, is controlling here. There this court said: "During all this time, as well as now, the lands were uninclosed, and we do not think it was the duty of the owner, in order to preserve his title intact, to be continuously on his guard or to forbid his neighbors from using the property for their convenience. A num-

ber of cases are cited in the 5th note to § 39, 9 R. C. L., chapter on Easements, which support this view, and the rule that the use of uninclosed lands for passage is to be presumed permissive and not adverse is stated to be that supported by the weight of authority and based on the fact that it is not the custom in this country, or the habit of the people, to object to persons enjoying such privilege until there is a desire to inclose. Were the rule otherwise, there would be but few vacant lots in our cities and towns and uninclosed property in the country which might not be burdened by easements of passageways, as it is a matter of common knowledge that by the indulgence and good nature of the owners people are allowed to go across these uninclosed properties at will and until such time as the owners may desire to inclose them. . . . Where the easement enjoyed is across property that is uninclosed, it will be deemed to be by permission of the owner, and not to be adverse to his title," and quoting headnote 2, we held: "To acquire a private way by prescription, the evidence must show a continuous use of a definite way for seven years, under a claim of right known and assented to by the owner of the land."

This case was quoted from with approval by this court in *Bridwell* v. *Arkansas Power & Light Company*, 191 Ark. 227, 85 S. W. 2d 712.

In 17 American Jurisprudence, page 980, § 71, the text writer states the rule in this language: "The prevailing principle seems to be that while a way may be acquired by user or prescription by one person over the uninclosed land of another, mere use of the way for the required time is not, as a general rule, sufficient to give rise to the presumption of a grant. Hence, generally some circumstance or act, in addition to, or in connection with, the use of the way, tending to indicate that the use of the way was not merely permissive is required to establish a right by prescription." See, also, *Martin* v. *Winston, ante,* p. 464, 190 S. W. 2d 962.

(2)   We think the contentions made by appellants in the second proposition, *supra,* are untenable and not supported by the preponderance of the testimony.   As to an alleged settlement of the boundary line between the original parties approximately two years after the temporary injunction was obtained in 1940, there is evidence that Elzie W. Sigman erected a building on the east end of his property, the east wall built of tile being in the alley way in question, about 15 feet from the west wall of the stone garage building of Riggs; that before he erected this building, he had a conversation with J. K. LeCroy which was overheard by two or three witnesses, in which it appears that Sigman asked LeCroy if it would be all right to place the tile wall to his proposed building on a certain line, pointing it out, that LeCroy said it would be entirely satisfactory.   This conversation took place while the temporary injunction was in full force and effect.   It appears that Mr. Sigman had consulted his attorney about closing the alley and was advised that while the temporary injunction was in effect, Mr. LeCroy could not be denied egress and ingress to his property, that Mr. Sigman claimed all the alley and the right to build on it, but being in immediate need of the building, he placed the east wall where there would be no complaint from LeCroy that he was violating the injunction.   This being the effect of the testimony as we view it, it falls far short of an agreement or settlement of the west boundary line of this alley.

On the question of estoppel, we think little need be said.   We find no evidence that any of the buildings on this alley way were erected with reference to the creation and establishment of this alleged alley.   In fact, the stone garage built by Riggs' predecessor in title, the west wall of which forms the east line of the alley in question for its entire length, covers all of Riggs' lot contained in his grant.   In other words, when this stone garage was built, it covered Riggs' entire lot, the west wall being at appellee's (Mrs. Sigman's) east line, with no allowance for an alley.   What we have said above on the first contention of appellants applies with equal force here.   Appellee

had not been put on notice of any adverse or hostile claims of appellants or anyone else to the alley way and, therefore, cannot be held to be estopped.

A great many cases are cited by appellants in support of their contentions; however, we think all are clearly differentiated on the governing facts.

Finding no error, the decree is affirmed.