MARTIN v. WINSTON.

4-7730                            190 S. W. 2d 962

Opinion delivered December 10, 1945.

Rehearing denied January 7, 1946.

*Taylor Roberts,* for appellant.

*Henry Donham* and *John F. Park,* for appellee.

GRIFFIN SMITH, Chief Justice. A strip of ground along part of the north side of Lot Seven[1] is claimed by Vaughan Winston and his wife because, as he says, it has been adversely used as a driveway for more than the time necessary for the easement to ripen into title by prescrip-

---

[1] Legal description is Lot Seven, Block Five, C. S. Stifft's Addition to the City of Little Rock.

tion. The Winstons owned Lot Six, which is equal in size to and lies immediately north of Lot Seven.

In their complaint the Winstons concede that George R. Martin and his wife are owners of Lot Seven. Serving Lot Six there is a driveway leading to Rosetta Street. This was used by the Winstons in reaching their garage at the rear of the property. Suit was commenced when the Winstons sought to enjoin the Martins from erecting a stone wall ". . . running from the front of defendant's property . . . west, along the north side of [the Martin] property to the back . . ." It was then alleged that if the wall should be erected "it would destroy for any further use about a foot and a half of the south side of said driveway next to defendant's property and would leave less than six feet of driveway . . ."

In addition to these allegations it was stipulated that the proposed wall would be located wholly on Lot Seven, and "plaintiffs do not dispute the correctness of the survey."

Vaughan Winston's testimony is that in 1937 he purchased Lot Six from W. A. Jackson. At that time Lot Seven was vacant. When Winston bought, a driveway south of the residence on Lot Six was being used. It was graveled, and there was a ditch on the south side. Street curbing had been cut as a means of ingress. In 1941 Jack Tucker owned Lot Seven, and during that year built a house on it. While the residence was being erected, or soon thereafter, Winston talked with Jackson regarding the driveway, and "If Jackson claimed any part of the [strip in question] he didn't do anything to gain possession." "But," said the witness, "Tucker had to tear down part of the house foundation, and [I] told him [I] would continue to use the driveway as my right until stopped."

After Tucker completed the residence, Kenneth Satterfield occupied it, but did not claim the driveway was on Lot Seven.

On cross-examination Winston first testified he had always "felt" that the easement was on his land, adding,

"There never was any doubt in my mind that it was a part of my property."

There is this significant testimony by Winston: "Q. Until Tucker started building . . . it did not occur to you that the driveway was not on Lot Six—is that right? A. Absolutely. Q. And that's the reason you were claiming it as yours? A. Yes, sir."

Jackson testified he used the driveway because he thought it was a part of Lot Six; *nor did he intend to sell the Winstons anything not embraced within the boundaries of Lot Six.*

About the time Tucker began building, Mrs. Winston asked if Lot Seven was for sale or if a part of it could be bought. Her explanation was that the improvements "might obstruct their driveway."

We do not think the testimony of Jackson, who owned Lot Six from 1926 until 1937, is sufficient to sustain a holding that he was claiming the property irrespective of the true line and actual ownership. In his deposition Jackson affirms that the driveway "was there" when he bought the property; and, while he says he used it "as a matter of right," and not permissively, support for that right, as he saw it, was a belief that Lot Six embraced the wider area. In effect there is a concession that if the legal description did not extend as far south as the Winstons would now have it, it was not his (Jackson's) intention to sell the strip. This witness was asked by cross-interrogatory (a) if he thought the driveway was [wholly] on Lot Six; (b) whether he thought he had a right to use it, "even though not on your property," and (c) "[Was it] your desire to appropriate some other person's property for your own use and benefit?" Answers to (a) and (b) were "Yes"; to (c), "No."

Likewise, appellees disclaim a purpose to appropriate something not theirs. They only contend for affirmance because, believing the driveway to be entirely on Lot Six, a purchase followed. Jackson did not personally or by agent point to boundaries. The plat shows each

lot to be 50 x 140 feet. There is nothing in the record indicating that surveys were confused, or that corners could not be ascertained.

We have two lines of decisions in respect of which the analogy of law and fact is pertinent. The case at bar touches a borderline of each. On the one hand there are results like those reached in *Murdock* v. *Stillman*, 72 Ark. 498, 82 S. W. 834; *Goodwin* v. *Garibaldi*, 83 Ark. 74, 102 S. W. 706; *Couch* v. *Adams*, 111 Ark. 604, 164 S. W. 728, and *Terral* v. *Brooks*, 194 Ark. 311, 108 S. W. 2d 489, where it was said that if, through mistake, one takes possession of adjacent lands, intending to claim only to the true boundary, the act is not adverse. On the other hand, it was said in *Shirey* v. *Whitlow*, 80 Ark. 444, 97 S. W. 444, that if a landowner, acting under a mistake as to the true boundary, takes possession believing the property to be his own, the act is adverse. In the Shirey-Whitlow opinion Mr. Justice RIDDICK cited *Wilson* v. *Hunter*, 59 Ark. 626, 28 S. W. 419, 43 Am. St. Rep. 63; 1 Cyc. 1037: ''. . . but this would not be so if [the non-owner's] intention was to claim only to the true line, wherever that may be, for then the possession would not be adverse beyond that line.''

In *Smart* v. *Murphy*, 200 Ark. 406, 139 S. W. 2d 33, Mr. Justice MEHAFFY, defining for the Court some of the essentials of adverse possession, quoted from a text on page 793, v. 1, § 2, American Jurisprudence: ''. . . [Adverse possession] is commenced in wrong and is maintained in right.''

Mr. Justice BATTLE's opinion in the Wilson-Hunter case states the law to be that ''No right or title can be gained against the owner by mere possession.'' In order that an action by the record owner may be barred, says Judge BATTLE, ''. . . the possession must be actual, open, continuous, hostile, exclusive, and be accompanied by an intent to hold adversely and 'in derogation of' and not in 'conformity with' the rights of the true owner.'' Thus (quoting from *Alexander* v. *Wheeler*, 69 Ala. 340), ''[If one intends] to claim . . . only to the real or

true boundary line, . . . such possession would not be adverse or hostile to the true owner.''

A witness named Newman testified that as driver of a candy truck he frequently ''parked'' on Lot Seven. This practice continued over a period of years, preceding the building of a residence on the property. No objection was made by either of the Winstons when Newman used the driveway, nor did anyone else complain.

While in no sense conclusive of an original, a continuing, or a subsequent intent to hold adversely, nevertheless purchase proposals by Mrs. Winston, or overtures seemingly having that purpose in view (made before use by the Winstons had continued for seven years), were circumstances postulating that when Tucker began building in 1941 the hostile attitude subsequently asserted by the owners of Lot Six did not exist. Mr. Justice RIDDICK held in the Shirey-Whitlow case that evidence of this nature is admissible, although he was dealing with the defendant's recognition of rights inferentially acknowledged after the statutory period had run.

With the exception of litigation arising through claims of public easement or right of way, most adverse possession litigation arises because landowners in rural areas do not at the time object to what is later asserted to be an encroachment.

In the case at bar the evidence is unsatisfactory regarding extent to which the driveway was defined, although admittedly it was partially graveled. Its constant width was not precisely given, although in general terms the distance south of the Winston residence is spoken of as seven and a half feet.

We think that Vaughan Winston's testimony, and evidence in his behalf, satisfies this proposition: that Jackson, without intending to infringe upon the property of his neighbor, but acting at a time when use of the land did not offend the true owner, curved the course of his driveway; but by this conduct there was no conscious or subconscious intent to ''raise the flag of claim,'' or to

commit an improper act. When the Winstons purchased, they merely presumed that the driveway was on Lot Six; and, continuing to utilize it in this manner, no adverse design was entertained until 1941. It is true one of the appellees testified that use made of the property was "as a matter of right," and there were other similar expressions. All these must be read in connection with the particular circumstance, with other testimony by the same witness, with relationship of the parties, and then compared with what they did and said. Our conclusion is that the so-called hostile notice to appellants and their predecessors in title (if in fact the result now sought was ever contemplated) was not actual in the sense that it gave information; and the acts were not of a nature to give constructive warning.

The decree is reversed. The cause is remanded with directions to dissolve the injunction.