ABBENE *v.* COHEN.

5-1375                                            306 S. W. 2d 857

Opinion delivered November 18, 1957.

*Coleman, Gantt & Ramsay,* for appellant.

*Sam M. Levine,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, Vince Abbene, brought this suit to restrain appellees,

Jay Cohen and wife, from closing an alleged alley or passageway along the rear of certain business properties which front on Main Street in the City of Pine Bluff, Arkansas. The appellant Abbene's store building is known as 617 Main Street. Intervener, David White, is the lessee of A. R. Cooper who owns a building located at 615 Main Street but declined to join in the suit. Abbene and White asserted that they and the public generally had used the pasageway openly, continuously and adversely for many years and that such usage had ripened into a prescriptive right or easement over a portion of appellees' Lot 20 feet wide and 118.89 feet long. Appellees answered with a general denial and alleged that any use made of their property by others had been sporadic, under specific arrangements with appellees and purely permissive.

In a decree dismissing appellants' complaint and intervention the chancellor found there was a lack of intent on their part to hold adversely against appellees and that the use made of the premises by appellants and the public generally was permissive. The issue here is whether such findings are against the preponderance of the evidence.

It is well settled by our cases that the owner of one lot may acquire an easement over the land of another by the open, notorious and adverse use thereof under a claim of right for a period of seven years. *Bond* v. *Stanton,* 182 Ark. 289, 31 S. W. 2d 409. But it is equally clear that a mere use, even though continued for the statutory period, does not ripen into a prescriptive right unless the circumstances are such as to put the owner of the servient estate on notice that the way is being used adversely under a claim of right. *Clay* v. *Penzel,* 79 Ark. 5, 94 S. W. 705; *Barbee* v. *Carpenter,* 223 Ark. 660, 267 S. W. 2d 768. Whether use of the passageway in question by appellants and the public was adverse or permissive is a question of fact; and the burden was upon appellants to show that such use was adverse to appellees and not under their permission. *Brundidge* v. *O'Neal.* 213 Ark. 213, 210 S. W. 2d 305.

Appellees' lot is approximately 20 feet wide and in the shape of an inverted "L." The vacant portion over which appellants claim an easement extends South from Sixth Avenue for 118.89 feet. From that point the lot extends at a right angle West 160 feet to Main Street and a building is located on this portion of the lot which appellees use as a storage or warehouse for their appliance business located in the next block. Other business lots lying South of appellees' lot fronting on Main Street also extend 160 feet but none of the buildings extended the full lot length until 1946 when the Chief Pontiac Company building adjacent to Abbene's building on the South was extended East so as to eliminate the entrance to the passageway area from Seventh Avenue. The appellants and other business men in the block made no protest when this south entrance was closed.

Appellees acquired their lot in 1944 and they and their predecessors in title have for 12 or 15 years exacted a rental for the use of the vacant portion of their lot as a passageway from the owners of the Chief Pontiac Company and the Western Auto Store, which is located between the buildings of appellees and the appellants. Appellant Abbene's building was constructed in 1919 by his father who operated a shoe repair shop in it until 1946 when appellant acquired the property and added a laundry and cleaning plant to the business. Appellee, Jay Cohen, and Appellant Abbene have been close personal and business friends for many years.

Cohen testified that in 1946 he demanded rents from Abbene for use of the passageway but agreed to forego the rental charge because appellant was unable to make such payments and agreed to a limited use of the area. He also said he made a similar temporary agreement with Intervener White who later agreed to pay the rental but failed to do so. White admitted but Abbene denied that Cohen demanded the rentals, but both knew that other property owners in the area were paying for use of the passageway. Abbene also admitted that he never notified Cohen that he was claiming any right to use his land. A prospective purchaser of Abbene's building testified that Abbene told him he had permission

to go through appellees' property and that the purchaser could probably work out a similar arrangement.

Appellants and some of their employees testified that they and their customers had used the area in question in parking vehicles at the rear of their places of business for 12 or 15 years. There was also evidence of some use of the area for freight deliveries during this period but there was other proof that most such deliveries were made through the front entrances on Main Street. A partner in the transfer business stated that he had observed his trucks make freight deliveries through the passageway "at least a dozen times" since 1946. While some of the witnesses thought the area in question was an alley it was never platted or dedicated to the city as such. At the conclusion of appellants' testimony they reduced their claim of an easement to "approximately 10 or 12 feet" instead of the entire 20-foot width of appellees' lot.

In reaching the conclusion that such use as was made by the appellants and others of the passageway in question was permissive, and without the intent to hold adversely under a claim of right, the chancellor relied heavily on our decision in *LeCroy* v. *Sigman,* 209 Ark. 469, 191 S. W. 2d 461. There we upheld the trial court's conclusion that the use of a passageway by those claiming an easement by prescription was permissive and not adverse where the physical facts and nature of occupancy and use of the disputed area were strikingly similar to that shown here. While the evidence in the instant case on this issue is in sharp dispute, there are several factors which lend greater strength to the position of appellees than that of the owners of the subservient estate in the *LeCroy* case. These are the close friendship of the parties, the closing of the South entrance to the passageway without protest in 1946, and the demand and collection of rentals for use of the area from other owners for 12 or 15 years. So we conclude that the chancellor's findings are not against the preponderance of the evidence, and the decree is affirmed.

Chief Justice CARLETON HARRIS, disqualified and not participating.