Duty *v.* Vinson.

5-1394                                                309 S. W. 2d 318

Opinion delivered February 3, 1958.

618

*Eli Leflar, Jeff Rice, Jeff Duty* and *E. J. Ball,* for appellant.

*Vol T. Lindsey,* for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, Claud Duty, owns a business building located on the Northwest corner of Block 8, Original Town of Rogers, Arkansas, in the center of the Rogers business district. Duty and his wife brought this suit to quiet title to the property which includes a plot 50 feet wide and 85 feet long on which the building is located and a strip about 15 feet wide and 50 feet long adjacent to the rear of the building on the South. Appellees, Mr. and Mrs. E. W. Vinson and Alice Laner, intervened claiming they and their predecessors in title and the general public had acquired an easement by prescription over the 15 ft. x 50 ft. strip by adverse use for more than 30 years. After an extensive hearing the chancellor held that appellants' title to the disputed strip was subject to an easement by prescription in favor of appellees and the public as an alleyway. The principal issue is whether this finding is supported by a preponderance of the evidence.

Except for certain additions to the Vinson property, the location of the disputed strip of land in relation to other property in the area is reflected by the

following rough sketch of said Block 8 introduced at the trial by agreement:

Plat. Book B Page 30
scale 1" = 40
S. W. Robertson, Sur.
Aug 21st 1889

It is noted that Walnut Street runs along the north side of the block, First Street along the east side, Elm Street along the south side, Second Street along the west side; and there is an alley 20 feet wide running north and south through the center of the block. The strip in question is also designated "alley" on the sketch and extends from Second Street east along the rear of the

Duty and Laner Buildings to the west side of the rear of the Stroud Building where it comes to a dead end.

Lots 2, 3 and 6 located in the Northwest corner of the block were owned by Stroud & Ferrenberg about 1895 when they began constructing buildings crosswise on Lots 2 and 3 facing north on Walnut Street. The Stroud Building was first erected and occupies the entire east 60 feet of Lots 2 and 3. The Laner Building was next constructed on the middle 30 feet of the two lots and originally extended from Walnut Street south about 50 feet but was later extended to within 8 or 10 feet of the south line of Lot 3. The Duty Building was next constructed about 1897 and covered all of the west 50 feet of Lots 2 and 3 except the disputed strip on the south. Duty purchased the property in September, 1949.

Vinson acquired the west 80 feet of Lot 6 in 1933 and the first building was placed on the northwest corner of the lot adjacent to the disputed strip facing Second Street sometime between 1943 and 1947. It is a temporary prefabricated restaurant building about 20 feet long and 20 feet wide. It belongs to the lessee of the property with the right of removal and is known as the "Snack Shack." In 1954 Vinson constructed the Brewer Building between the "Snack Shack" and the south line of Lot 6 completely enclosing the vacant area of Lot 6 fronting on Second Street.

It is undisputed that the strip of land in question was never platted or dedicated to the City of Rogers as an alley, or for public use, and the city has never so claimed it. Representatives of the city and the gas, telephone and electric companies testified the strip was shown as private property on their records and they disclaimed any right of easement over it. In the chain of title from the Government down to Duty no reference to an easement across the strip has ever been made nor do the deeds to Vinson and Laner contain any reference to an easement. Vinson has never mentioned an easement in his various leases of Lot 6.

Many witnesses testified about the use of the disputed strip and the adjacent area south of it for the past 30

or 40 years. A former owner and several lessees of the Duty Building testified that for several years prior to 1933 there was a small sheet iron building on Lot 6 which connected with a shed attached to the rear of the east half of the Duty Building, blocking any use of the disputed strip as a passageway. This was disputed by John Myler who assisted in the original construction of the buildings.

Vance Hill testified that he operated an automotive parts and supply store in the west half of the Duty Building from 1938 to 1947 during which time the disputed strip was used to change and repair tires and for other work in servicing the cars and trucks of his customers; and that it was not used as a driveway while he was there. Prior lessees of that part of the building stated they used the strip for similar purposes; and that before the erection of the "Snack Shack" all of Lot 6 except the space occupied by the small sheet iron building was vacant and unenclosed. Prior to 1946 the customers and tenants of the Duty and Laner Buildings used Lot 6 for their convenience in crossing from Second Street to the alley east of the Stroud Building, for parking wagons, cars and trucks and for transfer of merchandise to and from the stores. According to witnesses on both sides there was no systematic or exclusive use of any particular portion of either the disputed strip or Lot 6 during this period, but people entered upon the entire area at random. Similar use of the area south and east of the "Snack Shack" continued after it was placed on the Lot until 1954 when the Brewer Building was constructed.

Ivan Rose had operated a drug store in the west 25 feet of the Duty Building for about seven years prior to the trial. He stated he had an agreement with two successive operators and lessees of the "Snack Shack" permitting them to use the 15 foot strip for parking cars in the back of the restaurant in exchange of their agreement to allow him to park his car there; and that the agreement continued until about three months prior to the trial when T. A. Richards, lessee of the "Snack Shack" for 5 years prior to the trial, notified him not

to park there any more unless he paid a fee. The testimony of Richards tends to corroborate that of Rose as to the arrangement although he further stated the strip had also been used for the delivery of merchandise through two doors on the north side of the "Snack Shack" adjacent to the strip, and that it had been used generally as a passageway for many years without objection.

John Haw testified that he and two others operated a tire and battery shop in the east side of the Duty Building for about 10 years prior to 1931 and used a shed in the disputed strip behind the building for storage of old tires and the installation of new tires and other accessories. They buried an oil tank in the disputed strip which they used in their business and it is still there. He stated no use was made of the strip as a driveway or alley while they were there; that vehicles could not have been driven over the strip to the Laner Building; and that he never heard of any one claiming a right-of-way over it. Elvin Buell who had operated a paint store in this part of the building for about 5 years prior to the trial stated the strip had been used to haul trash from a bin behind the "Snack Shack" and the unloading of merchandise by trucks that back in from Second Street.

Tenants who operated clothing and dry goods stores in the Laner Building from 1929 to 1949 testified they occasionally used the narrow strip behind their place of business to dispose of trash; that all deliveries of merchandise were made through the front door of the store; and that they knew of no one using, or claiming the right to use, the area as an alley. Alice Laner's son operated a shoe store in the building from 1949 until 1953. He stated he used the disputed strip for the delivery of merchandise, and that many years ago his father had a shed at the rear of the building in which he kept his horse and carriage. The tenant of a shoe shop located in the building at the time of the trial stated that trucks backed into the disputed strip to unload merchandise occasionally.

An agent of the Railway Express Company in Rogers since 1937 stated he always made deliveries of merchandise through the front doors of the Duty and Laner Buildings and never used the disputed strip for that purpose. Others testified that in making deliveries of wood and coal to the rear of the buildings prior to 1947 there was no well defined route or passageway used but they entered over all the vacant lots along Second Street. After 1947 the deliveries were made by backing trucks into the disputed strip.

Gas and electric meters are attached or adjacent to the rear of the Duty and Laner Buildings but, as previously indicated, the companies are not claiming an easement over the strip in question. Seven water meters formerly located at the rear of the buildings were moved to and installed in the sidewalk along Second Street by Duty in August, 1955. There is a utility pole at the southwest corner of the Stroud Building with electric and telephone lines running to the various buildings but only those running to the Duty Building cross the disputed strip. The only water or sewer lines crossing the strip are those serving the Duty Building but a gas service line traverses it from a meter back of the Duty Building to the "Snack Shack." The manager of the gas company "assumed" they had a verbal agreement for the running of this line and the lines from the alley east of the Stroud Building across Lot 6 and to the meters behind the various buildings in the area.

Duty formerly maintained a trash bin in the strip over which the trash was removed. When Vinson constructed the Brewer Building in 1954 his tenants moved the bin to the rear of the "Snack Shack" and tenants of the Vinson, Laner and Duty properties have since been using it and the trash has been removed over the strip. Also in 1954 Vinson constructed an embankment behind the "Snack Shack" and Brewer Building to divert water into the disputed strip that formerly flowed south of the buildings because the lots slope from north to south. Downspouts from the Duty and Laner Buildings drain water into storm sewers in Second Street. A "corrugated" concrete sidewalk and approach to the

strip was constructed about 1925 when Second Street was paved and "no parking" signs were maintained there. The walk was so constructed to afford traction for vehicles using the area, but it should be remembered that the strip was then being used for changing tires and the general servicing of the cars and trucks of the customers of the automotive supply stores operated in the Duty Building.

Witnesses for appellees testified generally that the disputed strip had been used as an alleyway or passageway for many years but most of them who had actually used this and the other vacant area of Lot 6 stated they used it occasionally for their convenience or as customers of tenants of the Vinson, Laner and Duty Buildings. Most of them also conceded that all this vacant area was used at random in crossing from Second Street to the north-south alley prior to 1946, and that this use continued in part thereafter until 1954.

While the owner of one lot may acquire an easement over the unenclosed land of another by open, continuous and adverse use thereof under a claim of right for a period of seven years, a mere user does not ripen into a prescriptive right unless the circumstances are such as to put the owner of the servient estate on notice that the way is being used adversely under a claim of right. *Bond* v. *Stanton,* 182 Ark. 289, 31 S. W. 2d 409; *Barbee* v. *Carpenter,* 223 Ark. 660, 267 S. W. 2d 768. The burden was upon appellees to show by a preponderance of the evidence that the use of their tenants and the public generally of the disputed strip was adverse to appellants and their predecessors in title and not under their permission. In support of their contention that this burden was met, appellees rely on *Bond* v. *Stanton, supra; Kirby* v. *City of Harrison,* 202 Ark. 1, 148 S. W. 2d 666; and *Harrison* v. *Knott,* 219 Ark. 565, 243 S. W. 2d 642. Particular reliance is also had on *Robb & Rowley Theaters, Inc.* v. *Arnold,* 200 Ark. 110, 138 S. W. 2d 773, which involved long and continuous usage by the public and adjacent owners of a paved alleyway in the business section of the City of Little Rock.

While former decisions are rarely controlling on the factual issue of whether a particular use is permissive or adverse, we think the decision here is controlled by the principles applied in *LeCroy* v. *Sigman,* 209 Ark. 469, 191 S. W. 2d 461; *Brundidge* v. *O'Neal,* 213 Ark. 213. 210 S. W. 2d 305; and *Abbene* v. *Cohen,* 228 Ark. 266, 306 S. W. 2d 857. In our opinion a preponderance of the evidence does not support the conclusion that appellees and the public generally acquired an easement by prescription over appellants' lot by open, continuous and adverse use for the required period of seven years. On the contrary we think the greater weight of the testimony is to the effect that the use shown was fitful and permissive only.

The decree is accordingly reversed and the cause remanded with directions to dismiss the intervention and cross-complaint of appellees. Appellants will recover all appeal costs except the amount of $135.60 which will be reimbursed to appellees for their supplemental abstract of the record occasioned by appellants' delay in filing a narrative statement of a part of the testimony and their failure to abstract the testimony of certain witnesses named in their designation of record.