Doyce H. STONE et ux *v.* Elmer J. HALLIBURTON

5-4415                                    425 S. W. 2d 325

Opinion delivered March 18, 1968

*James R. Howard*, for appellants

*Charles L. Carpenter*, for appellee.

John A. Fogleman, Justice. This is the second appeal in this case. On the first appeal, we held that the lower court erred in sustaining a motion to dismiss

challenging the sufficiency of the evidence on behalf of appellants to make a prima facie case to establish a prescriptive easement for a road or driveway across the lot on which appellee's home is situated. *Stone* v. *Halliburton*, No. 5-4017, 241 Ark. 710, 409 S. W. 2d 829.

On remand, the trial court heard the testimony of witnesses offered by appellee and rebuttal testimony offered by appellants. The complaint of appellants was dismissed for want of equity. The only question for our determination is whether the chancellor's holding that appellants had not established a prescriptive easement for a way across appellee's lot is clearly against the preponderance of the evidence.

Appellants' east boundary is appellee's west boundary. Both tracts (along with a lot now owned by one Perry) were once owned by John Redding. The Perry lot lies immediately north of appellants' property. Bellwood Addition and Annex lie immediately west and south of the Stone property. Stone purchased his house and lot on September 19, 1962, from one Edwards. Mr. and Mrs. Edwards told him that he had a right of ingress and egress through the Halliburton property. One of Redding's children sold the Halliburton lot in 1957 to Marion Witkowsky, who sold it to appellee in 1959 or 1960. Mrs. Roe, a daughter of Redding, sold the Stone lot to Edwards.

Redding Lane runs in a westerly direction from the old Conway highway along the north side of appellee's property and is admitted to be a public way until it reaches a point near the northwest corner of appellee's lot. Appellants contend that this way continues on a curving route across the northwest corner of appellee's lot, the southeast corner of the Perry lot and near the north boundary of appellants' lot. This drive presently terminates at the western boundary of appellants' property, near which their home is situated. Appellee contends that the use of the portion of the way across his

property has been permissive and that he has withdrawn his permission for its use. He claims that he had the right to build a fence crossing the drive along his boundary.

Appellant, Doyce Stone, testified that the road or driveway was in the same condition as it was when he purchased his property until appellee built the fence in June 1965. He said that he had used the portion of the way across appellee's property all this time and that this is the only way of getting in and out of his property. Since the fence was built, he has crossed the Perry property. Stone saw a post on the boundary line when he first moved into his home. He referred to the way as his drive or driveway. According to him, the only persons, other than himself, using the part in question were Mrs. Perry, who used it as a circle on which to turn around, and those persons coming in to see him. At the time of his purchase he was told that he had a separate deed for a 20-foot drive. This deed was never produced. When Stone asked the mayor to pave Redding Lane, he also asked that the driveway be blacktopped. The mayor refused to do the latter because he considered the driveway to be private property. When appellant talked to Edwards after Halliburton blocked the drive, Edwards told him of having had the same trouble with Halliburton.

One A. M. Duncan testified that he first became familiar with this property in 1952. He said that he used the road in question to get into the territory to go squirrel hunting in the 1950's. He stated that the only part of the road that is different in any respect is the portion of Redding Lane that has been blacktopped (*i. e.,* the portion conceded to be a public way). He said that the road was used by John Redding to get in and out from his property and by the public to get back to the Redding house (now the Stone house). He admitted that Redding had told him that he could come in there.

Mrs. Bessie Turley, who has lived on Redding Lane since 1942, also testified. She stated that the road has passed her property and the Stone house and proceeded to the Witkowsky property, lying immediately west of the Redding property, since 1942. She said that no road was actually built in 1942, but that people just drove in and out. She testified that Redding was a contractor and kept his trucks on his property and that Mr. John Witkowsky had some cattle and hogs he kept beyond the Redding house. She said that everyone used the road to get in and out and to feed the stock and hogs. She called it a public road. She testified that Bellwood Addition had taken a part of the road, closing it at the west boundary of the Stone property. According to her, no one had ever tried to block the road except Mr. Halliburton who had blocked it three or four times. She said he had blocked it on Mrs. Roe, Mr. Edwards and Mr. Stone.

Sam Block, a real estate broker who had been familiar with the property since it was owned by Mrs. Roe, sought to help Edwards avoid litigation by obtaining an easement from Halliburton when the latter fenced off the way during Edwards' occupancy of the Stone tract. Block had handled the sale of the property by Mrs. Roe to Edwards.

Marion Witkowsky testified that at the time he purchased the Halliburton lot, there were several wagon trails and that he made an all weather road which ended at the edge of the Redding property (now the Perry lot). He stated that Mrs. Roe then owned both the Stone lot and the Perry lot. He recalled that somewhere around 1957 or 1958, Mrs. Redding (Roe?) sold the Perry lot to one John Perrin. Witkowsky then told Mrs. Roe that she was cutting herself off from the road by the sale of this property and suggested that she have some written agreement with the purchaser, but she relied on her friendship with her purchaser.

According to appellee's testimony: Mrs. Roe was living in the Stone house when he acquired his property and a man named Ratliff was living on the Perry property; at that time, Mrs. Roe was crossing his property via an old wagon trail near the present location of his garage, some 30 feet north of the disputed area; he built a fence extending out from his garage, and Mrs. Roe then started using the disputed area for ingress and egress; although he spoke to her about this, she did not change her route; she sold the Stone lot to Ratliff;[1] the use of the entry across his property ceased upon the sale to Ratliff and no one thereafter has crossed his property without his permission; Edwards put gravel on the drive up to the property line and Stone had the disputed area graveled; appellee put up a fence on the line when Edwards lived on the Stone lot; he had given Edwards permission to cross as long as there was no trouble; the fence was still up when Stone first moved there, but he told Stone he would take the fence down until they had trouble and that Stone could use the driveway until then.

Mrs. Halliburton, a part owner of the property, corroborated her husband's testimony about the means of ingress and egress used by Ratliff and said that appellee told her of giving Stone permission to cross the corner of the property.

George White testified in rebuttal. He said that he had been acquainted with the properties of the parties since 1924; that back as far as he could remember, the road of which Redding Lane was a part went all the way back to the river; that when he first knew the property there was a dairy at the site of the Stone house and that this road was used by many people such as fishermen who used it to get to Levy; that the road was used as a public road up until the Bellwood Subdivision went in.

---

[1]This deed was dated February 6, 1959.

Although appellants contacted Edwards when this controversy arose, he did not testify. Apparently none of the property owners protested when the alleged way was closed on the west by the laying out of Bellwood Addition.

The determination of whether use of a way over the lands of another is adverse or permissive is a fact question. *Brundidge* v. *O'Neal*, 213 Ark. 213, 210 S. W. 2d 305; *St. Louis Southwestern Ry. Co.* v. *Wallace*, 217 Ark. 278, 229 S. W. 2d 659. Former decisions are rarely controlling on the factual issue of whether a particular use is permissive or adverse. *Duty* v. *Vinson*, 228 Ark. 617, 309 S. W. 2d 318. If the use of this way was permissive or if the circumstances were not such as to put appellee and his predecessors in title on notice that the way was being used under a claim of right, then appellants cannot prevail. The burden was on appellants to show by a preponderance of the evidence that there has been use of the disputed strip which had been adverse to appellee and his predecessors in title under a claim of right, and not permissive, for a period of at least seven years. *Duty* v. *Vinson, supra*; *Brundidge* v. *O'Neal, supra.*

Use which is permissive in its inception can never ripen into an adverse or hostile right no matter how long continued unless the statutory period has elapsed after notice of the adverse claim has been brought home to the owner. *Harper* v. *Hannibal*, 241 Ark. 508, 408 S. W. 2d 591. Some act or circumstance, in addition to, or in connection with, the use of a way across unenclosed lands of another and tending to indicate that the use was not merely permissive is required to establish a right by prescription. *LeCroy* v. *Sigman*, 209 Ark. 469, 191 S. W. 2d 461.

An inference may well be drawn from the testimony of Marion Witkowsky that no use was being made of this disputed strip between his acquisition of the property in 1957 and his sale to appellee. There is evidence

tending to show clearly that appellee has at all times since his purchase of the property sought to exercise dominion and control over the disputed strip, that he granted permission to both Edwards and Stone to use the strip, and that, at one time before the present occasion, he withdrew that permission. The closing of the west end of this way without protest is also a factor to be considered in determining the fact question whether or not use has been permissive. *Abbene* v. *Cohen*, 228 Ark. 266, 306 S. W. 2d 857.

Furthermore, there is no evidence to indicate when the Halliburton residence was built or when, if ever, the lot was enclosed. Use of unoccupied and unenclosed lands for passage is presumed to be permissive until those using the way, by their open and notorious conduct, apprise the owner that they are claiming it as of right. *Boullioun* v. *Constantine*, 186 Ark. 625, 54 S. W. 2d 986; *LeCroy* v. *Sigman*, 209 Ark. 469, 191 S. W. 2d 461.

While not conclusive, the overtures made to appellee by Block in behalf of Edwards may properly be considered as a circumstance bearing on the nature of the use. *Martin* v. *Winston*, 209 Ark. 464, 190 S. W. 2d 962.

Not having had the advantage of seeing and hearing the witnesses, we are unable to say, on the conflicting testimony, that the finding of the chancellor is clearly against the preponderance of the evidence.

The decree is affirmed.