Thomas W. ARMSTRONG et ux v.
Leo Juanita McCRARY

5-5416                                    462 S. W. 2d 445

Opinion delivered January 18, 1971
[Rehearing denied February 15, 1971.]

*Frank H. Cox,* for appellants.

*Howell, Price, Howell & Barron,* for appellee.

Lyle Brown, Justice. This litigation was commenced by appellee, Leo Juanita McCrary, in which she sought to restrain appellants, Thomas W. Armstrong et ux, from interfering with appellee's use of a driveway situated between the homes of the parties. The

chancery court granted relief and the Armstrongs appeal. They advance two points for reversal, (1) that appellee failed to establish by clear and convincing evidence the existence of a joint driveway, and (2) that any use of the driveway by appellee and her predecessors in title was permissive and therefore never ripened into a prescriptive right, the element of notice of adverse claim not having been established.

The driveway is located on East Sixth Street in Little Rock. It runs north and between appellants' and appellee's homes. Record title to most of the driveway is vested in appellants, the Armstrongs, with appellee, Mrs. McCrary, owning record title to the remainder. The Armstrong residence is at 604 East Sixth and Mrs. McCrary's home is at 608 East Sixth. There appears to be little dispute about the origin of the driveway. Long before the turn of the century the property now in litigation was a part of a larger tract of land on which was located a stately home called Curran Hall, which faced Fifth Street. This driveway, made of cobblestones, served as a carriage drive to the described homestead. The driveway entered from Sixth Street. That portion of the Curran property which faced Sixth Street was parceled into lots. Mr. Snodgrass acquired the property which is now 604 East Sixth Street, and his partner, Mr. Bracy, acquired the adjoining property which is now 608 East Sixth, and each of the men constructed a home. The cobblestone driveway was located between the two properties. In about 1932 Mr. Snodgrass and Mr. Bracy constructed a double garage behind the houses and astraddle the property line. Mr. Snodgrass could drive an automobile directly from the driveway into his side of the garage. Mr. Bracy could drive his car down the driveway until he reached a point about twenty feet from the garage; then he had to veer to his right and get completely on his property to reach his side of the garage.

In 1939 appellee moved into the Bracy house at 608 East Sixth, and purchased it in 1946. In 1956 appellants purchased the Snodgrass home. In 1969 appellants

erected a metal fence down the property line, connecting it at the center of the double garage. The new fence made it impossible for appellee to reach her garage from East Sixth Street. The erection of the fence resulted in this lawsuit.

Appellee testified that from 1939 to 1949 her family did not have an automobile but that they constantly used the driveway as a walk way, that her two sons used it to bring their bicycles to the rear of the home, and that deliveries were made to her over the driveway. She testified that her husband (now deceased) acquired a car in 1949 and that from that time until 1965 they used the driveway without objection from anyone; that they often parked overnight in front of their garage doors, which was on their property; that for thirty years she raked and mowed half the driveway; that until parking became prohibited on East Sixth Street they often parked in front of the house; and that after her husband's death in 1962 she had extensive repairs made to the home and the workmen utilized the driveway. She related that they never sought permission from anyone to use the driveway because they considered it "partnership property"; that it was not until 1965 that any question was raised; that appellant Armstrong at that time made an objection; and that she, as a result of the complaint, looked into the possibility of building a driveway entirely on her property, but found it not to be economically feasible.

Witness Mary Bracy Manning related that she was born in 1905 in the house now owned by appellee; that during her early years the driveway was used by the occupants of both houses; that in 1932 she and her husband moved into the 608 East Sixth Street property and lived there for seven years; and that during those years of occupancy the Mannings owned an automobile and used the driveway and the joint garage. The Mannings moved just two houses down the street in 1939 and of course were in a position to observe the use of the driveway during subsequent years. When the Mannings moved out, appellee and her family moved in.

The witness related that she observed appellee's two sons frequently using the driveway with their bicycles and as they grew to manhood they drove their cars over the same route and parked near the garage on appellee's property. The witness corroborated appellee with reference to the use of the driveway for the Mc-Crary family car continuously since 1949.

Van Manning testified that he rented the Bracy house in 1925 for the benefit of his mother and sisters and during their occupancy he frequently used the driveway. The witness further related that in about 1944 he had a survey made of the Bracy property in anticipation of selling it; that it was determined that the front of the dual garage was not on the true property line; that a contractor was employed to lift the garage and move it to where it would be exactly astraddle the property line; and that Manning and M. E. Michell, who then owned the Snodgrass property, shared the cost.

Witness Essie Hall has lived in the first house east of appellee's property for twenty-five years. She testified that Mrs. McCrary, appellee, frequently used the driveway throughout the years that the McCrary family had an automobile; and that prior to that time, Bill McCrary, the son, had an automobile and he utilized the driveway.

Witness Robert McCrary, son of appellee, testified as to the frequent use of the driveway by him, his brother, mother, and father. His testimony generally coincided with the evidence given by his mother.

Appellants produced four witnesses, including one of the appellants, Thomas Armstrong. Witness M. E. Michell purchased the Snodgrass property in 1946 and resided there about two years. He cut down the terrace just inside the curb and installed a concrete apron to facilitate the use of the driveway for modern cars. He testified that he could not recall ever having seen anyone other than his family using the driveway. He conceded that his position took him out over the State quite

frequently. When he was home he paid little attention, he said, to his neighbors. In fact he never recalled having seen the McCrary boys.

Mrs. Edwin Sharp testified that she bought the Snodgrass house from Michell and lived there from about 1946 to 1956; that to her knowledge the McCrary family did not use the driveway, nor did they park their car at the end of the driveway over next to the Mc-Crary garage. She said that on many occasions the Sharp automobile was parked in the driveway and it could not be traversed by another car. She conceded that she was away from home a great deal of the time, apparently teaching school.

Since 1908 Mrs. Averell Reynolds Tate has spent most of her life in the immediate neighborhood, and in sight of the property of the litigants. She testified that she never observed the McCrarys using the driveway. It was her observation that the families who occupied the Snodgrass house through the years made a practice of parking cars in the driveway and that fact made it impossible for the McCrarys to travel the driveway. On cross-examination she recalled that appellee's family did use it but very infrequently.

Appellant Thomas W. Armstrong purchased the Snodgrass property in 1956. He asserted that throughout the years he had maintained the driveway and over to the iron fence on appellee's property, cutting the grass, raking the leaves, and trimming back appellee's hedge so it would not interfere with his use of the driveway. He insisted that neither appellee nor members of her family used the driveway, except on rare occasions, one such exception being when appellants were on vacation. There was another instance in which he said he granted permission to appellee to use the driveway; that was the spring of 1969 when parking on Sixth Street was prohibited—appellant said he granted permission with the understanding that appellee would shortly make other arrangements. When he pressed her, so appellant asserted, appellee contended that he had no right to block

the driveway. That was when appellants decided to construct the fence which resulted in the lawsuit.

The burden was on appellee to establish by a preponderance of the evidence that her right to the use of the driveway had become vested by prescription; and she also assumed the burden of establishing that the driveway has been used adversely under a claim of right. (Appellants contend that clear and convincing evidence is required but their contention is in error.) *Abbene* v. *Cohen*, 228 Ark. 266, 306 S. W. 2d 857 (1957); *Duty* v. *Vinson*, 228 Ark. 617, 309 S. W. 2d 318 (1958). The continued use of a passageway without objection and over a long period of years can establish adverse use so as to ripen into title by limitation. *Rochelle* v. *Piles*, 244 Ark. 606, 427 S. W. 2d 10 (1968); *Fullenwider* v. *Kitchens*, 223 Ark. 442, 266 S. W. 2d 281 (1954); *McGill* v. *Miller*, 172 Ark. 390, 288 S. W. 932 (1926). Our holdings in that respect comport with the great weight of authority; particularly with reference to a passageway lying along the boundaries between two lots under separate ownership. In 27 A. L. R. 2d, p. 332, § 4, is this statement:

> In the great majority of instances in which a lane, private road, alley, driveway, or passageway lying over and along the boundary between lots or tracts has been used without interruption by the adjoining owners for the full prescriptive period, and for a common purpose, and without any oral agreement therefor being shown, the user of each owner has been regarded as adverse as to the other and the claim of prescriptive easement upheld as against any attempt to restrict or deny the use.

We are unable to say that the findings of the chancellor are against the preponderance of the evidence. Whether appellee used the driveway and under a claim of right was highly disputed, as can be seen from our summary of the testimony. The chancellor elected to give greater credibility to the evidence proffered by ap-

pellee and he was in much better position than are we to make the choice. Additionally, the construction of the double garage in 1932 by Snodgrass and Bracy is highly persuasive. Each had contributed part of the land that went into the project and they endeavoured to place the double garage astride the common boundary. Entrance to Mr. Bracy's side of the garage from the street could be gained only by traversing the established driveway. The hedge and wrought iron fence on the Bracy property, instead of being straight, curved at the north end so as to permit Mr. Bracy to deviate to the right at the north end of the driveway and enter the garage. The enumerated physical facts were visible to appellants and to their predecessors in title. An ordinary inspection of the premises by appellant Armstrong, at the time when he was a prospective purchaser, would surely have put him on inquiry, which would have led to the knowledge that the occupants of the property adjoining him had long used the driveway to get to the garage or the parking area adjacent thereto. We have held that when ordinary inspection of the premises by a purchaser, followed by reasonable inquiry, would reveal the existence of a servitude then he is charged with notice. *Hannah* v. *Daniel*, 221 Ark. 105, 252 S. W. 2d 548 (1952).

Affirmed.

HARRIS, C. J., and GEORGE ROSE SMITH, J., dissent.

GEORGE ROSE SMITH, Justice, dissenting. In the recent case of *Stone* v. *Halliburton*, 244 Ark. 392, 425 S. W. 2d 325 (1968), we restated familiar rules that I consider to be controlling in the case at bar:

Use which is permissive in its inception can never ripen into an adverse or hostile right no matter how long continued unless the statutory period has elapsed after notice of the adverse claim has been brought home to the owner. *Harper* v. *Hannibal*, 241 Ark. 508, 408 S. W. 2d 591. Some act or circumstance, in addition to, or in connection with,

the use of a way across unenclosed lands of another and tending to indicate that the use was not merely permissive is required to establish a right prescription. *LeCroy* v. *Sigman*, 209 Ark. 469, 191 S. W. 2d 461.

Here the use of the driveway began when the adjoining properties were owned by Mr. Snodgrass and Mr. Bracy, who were business partners for many years. There is not the slightest suggestion of any hostile claim between those two friends and neighbors. Nor was there any hint of hostility on the part of the Mannings, who occupied the property until 1939.

The appellee moved into the property as a tenant in 1939 and bought it in 1946. Her sons were aged 13 and 9 when the family first occupied the house. Surely it is not seriously suggested that a hostile claim was established by the activities of those children in riding their bicycles along the driveway, no matter how continual that activity may have been.

The McCrarys did not acquire a car until 1949. Thereafter they used the driveway from time to time, as a convenient means of access to their back door. Mrs. McCrary admitted, however, that they never parked their car in their half of the double garage and that as often as not they parked it in the street. She did not testify that she or anyone else ever brought notice home to the neighbors, by words or by acts, that a hostile claim was being asserted. To the contrary, she said that no question was raised until appellant Armstrong objected to her use of the driveway in 1965. Instead of asserting her supposed rights at once, Mrs. McCrary investigated the cost of putting in a driveway on her own property, where there is ample space for such a facility. It was not until she discovered that the cost would be more than she wanted to pay that she first gave any indication of an adverse claim to the easement.

Under our law, a use originally permissive can become adverse only by the assertion of a hostile claim in such a fashion that notice of it is brought home to

the landowner. I do not find any point in time when such a claim was asserted, nor does the majority opinion mention such a point. I do not find any action on the part of the McCrarys so unequivocally hostile as to constitute such notice to their obliging and unsuspecting neighbors, nor does the majority opinion mention such conduct. In my opinion the chancellor's decree should be reversed as being contrary to the preponderance of the proof.