ALBERT WILSON JR. ET UX *v.* STEVEN BRANDENBURG
ET AL

5-5932                                    481 S.W. 2d 715

Opinion delivered June 26, 1972

*Frank W. Booth,* for appellants.

*Batchelor & Batchelor,* for appellees.

LYLE BROWN, Justice. The appellants are Albert Wilson, Jr., and Linda Wilson, his wife. The appellees are Steven Brandenburg and Marla Brandenburg, his wife, Ramona Ivey, and Odell Patterson and Ruby Patterson, his wife. This is a boundary line dispute between appellants, the Wilsons, on the one hand, and the three neigh-

boring landowners, the Brandenburgs, Ivey, and the Pattersons. The chancellor held in favor of the appellees except that an easement was granted appellants across the land of Ramona Ivey, from which the latter cross-appeals. On the direct appeal the sufficiency of the evidence is attacked and the form of the decree is alleged not to be in conformity with the actual findings of the chancellor.

In 1970 appellants purchased a contiguous tract of 52.70 acres in Crawford County. Appellee Ivey joins the appellants' tract on the northwest corner; appellees, the Pattersons, join appellants on the southwest corner; and appellees, the Brandenburgs join appellants at appellants' southeast corner. Each of the appellees lives on their respective tracts. Not long after appellants purchased their tract they had it surveyed. As to the Ivey home, it was allegedly some ten feet over on Mrs. Ivey, splitting a well house, and taking in part of her back yard. As to the Patterson tract, Patterson contended that the new line closed off a small area of his land which had been used as a garden. According to Mr. Brandenburg the new line came through the center of their house and well site. That survey started the litigation. We summarize the findings of fact of the chancellor with respect to each tract.

*The Survey.* The chancellor discounted the survey. The court said it was clear that the exact position of a definite corner originally fixed by the Federal Government Survey was not actually located or checked; that the surveyor commenced from some points which he felt had previously been indicated on charts and plats and measured until he was satisfied that he had found particular locations; that there was considerable confusion about the exact locations of any exact stone or markings and that none of them were checked against existing Federal markings; and that for those reasons absolute reliance on the survey could not be had. We are unable to say that the findings of the chancellor with respect to the survey were against the preponderance of the evidence.

*The Ivey Tract.* Mrs. Ivey has owned, cleared, and occupied her tract of land since 1962 and until this date.

Her cleared land extends over to the wooded area of appellants' property, that being some ten feet beyond the new fence erected on the surveyed line. It was found that she had been in undisputed and uninterrupted possession of the land continuously since 1962, with the exception of a lane which we will later mention.

*The Patterson Tract.* The evidence was clear that the Pattersons had a deed to, and had occupied the property in litigation, for some twenty-two years. The court found, upon viewing the property, that there is a cleared area north and east of the fence line installed by appellants, that being part of a garden grown by the Pattersons for a number of years. It was found that an old fence line, covered with honeysuckle, was the actual boundary up to which the Pattersons claimed title for all the years they lived there.

*The Brandenburg Property.* The chancellor found that the Brandenburgs and their predecessors in title had been in adverse possession of a clearly defined tract for some twenty years, a part of which appellants claim under their survey. The new survey line would split the Brandenburg house and well.

As is usual in cases of this type there is an abundance of testimony on both sides. We have certainly not overlooked the testimony of appellants and their witness; but when we compare it with the testimony supporting the chancellor's findings we are unable to say that his conclusions are clearly against the preponderance of the evidence (except for the easement). Not only did the chancellor hear considerable evidence—he viewed the property.

*The Easement.* Appellants claimed an easement for a passageway from the public highway, across Mrs. Ivey's front yard and onto appellants' land. Prior to Mrs. Ivey's purchase, the land she bought was wild and unimproved. For a number of years the owners of the Wilson tract cut across that unimproved tract at times during the year when the creeks were swollen. When Mrs. Ivey cleared the land and placed improvements thereon she continued to permit the use of the land across her front

yard. She testified that she told the parties that she had no objection to them using the traveled way when the creeks were high. The county road employees would occasionally blade the road up to Mrs. Ivey's yard, then skip over to the Wilsons' tract to continue their blading. There was no contention that this alternate road was a part of the county highway system. To acquire a private way by prescription it is generally the rule that some circumstances or act in addition to the use of the way tending to indicate that the use is not merely permissive is required. *LeCroy* v. *Sigman,* 209 Ark. 469, 191 S.W. 2d 461 (1945). Circumstances other than continued use must "bring home to the servient owner a clear notice of hostility". *Williams* v. *Fears,* 248 Ark. 486, 452 S.W. 2d 642 (1970). "Easement by prescription may be created only by adverse use of privilege with knowlege of person against whom easement is claimed, or by use so open, notorious, and uninterrupted that knowledge will be presumed, and exercised under claim of right adverse to owner and acquiesced in by him." *Craig* v. *O'Bryan,* 227 Ark. 681, 301 S.W. 2d 18 (1957). We do not think a preponderance of the evidence established those elements rigidly adhered to by this court throughout the years.

Appellants say the court erred in allowing the decree to be filed in the form in which it was presented to the court. It is argued that the decree does not conform to an extensive opinion letter filed by the court. We cannot compare the opinion letter with the decree because the letter is not abstracted. Additionally, we do not find where this point was raised in the trial court. If there is an apparent discrepancy in the land descriptions in the decree we see no reason why that cannot be corrected by the trial court.

Affirmed on direct appeal, reversed on cross-appeal.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur for the same reason I found it necessary to do so in *City of Ft. Smith* v. *France,* 250 Ark. 294, 465 S.W. 2d 315, i.e., I must defer to the chancellor's holdings, because I am

unable to follow critical testimony without the repro-
duction in the abstract of a plat from which one could
see the relative location of the tracts involved and the
boundaries claimed by the parties. There is really a much
stronger compulsion to defer to the chancellor's findings
in this case, because his understanding of the evidence was
bolstered by a view of the tracts.