CLAY v. PENZEL.

Opinion delivered April 30, 1906.

PRIVATE WAY—ADVERSE USE.—A private way over the land of another may
be acquired by open, continuous and adverse use for seven years
under a claim of right.

Appeal from Pulaski Chancery Court; *Jesse C. Hart*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

Terrence O'Dougherty and Harry Mesler are the owners of
land on west side of block 353, in the city of Little Rock, while
Adam C. Penzel owns land in block 354 west of the land owned
by O'Dougherty and Mesler.   Between the land of O'Dougherty
and Mesler and the land of Penzel is a strip of land fifteen feet
wide which they, since 1888 or 1889, have used as public alley
separating the two blocks.   M. J. Clay was at one time the
owner of the whole of block 354.   He claims that this fifteen-foot
strip is not a public street or alley, but that it is part of block 354,
which he has never sold; that its use by the parties named above
has been with his permission and in recognition of his right.   In
1901 he commenced to erect a building on this strip of ground,
and thereupon O'Dougherty, Penzel and Mesler brought this
action to enjoin him from obstructing the street in that way.

The defendant, Clay, filed an answer and cross-complaint,
in which he alleged that he was the owner of the fifteen-foot strip
of land in question; that plaintiffs had without authority taken
dirt and gravel from the land in question which he alleged is
owned by him, and he alleged that one of the plaintiffs had laid
a private sewer across this land, whereupon he prayed that the
injunction be dismissed, that plaintiff be required to replace the
dirt and gravel, and that he have judgment for his costs.

Both parties took depositions, and on the hearing the chancellor made the following findings of fact, towit:

"The court doth find that the fifteen-foot strip of ground or
passway mentioned in plaintiff's complaint and amendments
thereto is a part of Izard Street extending between blocks 353
and 354 of the City of Little Rock from North Street to the

Arkansas River, as represented and designated upon a certain plat, made or caused to be made, and intended to be filed in the office of the circuit clerk and ex-officio recorder of Pulaski County, by Chester Ashley and Roswell Beebe, the original owners of the west half of section three, township one north of range 12 west, of said county in which said blocks and street so represented are situated; and that on said plat said west half of section 3 was represented as divided into lots, blocks and streets, including said Izard Street so extended, and that on or about the 30th of November, 1849, by deed duly recorded in said recorder's office, said land was partitioned between said Ashley and Beebe by reference to said plat, and that they, their heirs and assigns, afterwards made many and divers conveyances of lots and blocks of said land by numbers as designated on said plat and in some instances by direct reference to said plat; and that for all that part of the city of Little Rock lying west of State Street, north of Twelfth Street, east of the State Penitentiary ground and south of the Arkansas River no trace has ever been found of any other plat or bill of assurance to which reference could be made. That said west half of section 3 covered by said plat became a part of the city of Little Rock by act of the General Assembly of the State of Arkansas of January 7, 1861, and was ever afterwards recognized and treated by said city as a part thereof. That said strip of ground has never been entirely closed up, unless for a short period of time by defendant Clay in the early sixties, and that the gate he claims to have at one time had at the north entrance of said passway was moved away at or about the time he made his conveyance to R. H. Farquahar of April 13, 1883, and that in said conveyance said defendant left out the fifteen-foot street of ground which lies immediately west of said block 353, which is the situs of said passway, and that it was then intended that said way should remain open, and that all the plaintiffs bought their abutting property with the understanding that it was and would so remain, and that they had a fixed right to its use, and that since then said passway has been entirely open and free from any obstruction and notoriously used without any let or hindrance, license or permission from said Clay, by any person who saw fit, as a passway from said North Street to the Arkansas River; and was so used by many residents of said city

of Little Rock, and that plaintiffs and those under whom they claim have from that time on used the same openly, notoriously, continuously and adversely and under claim of right with the knowledge of said Clay, and not under any license or permission of said defendant, and that said use was never interrupted or disturbed by any act on the part of said defendant or any one else prior to his attempt in September, 1901, to shut up the same by putting up brick piers for the building of a house thereon, as stated in plaintiff's original complaint herein. That said defendant Clay had no right or title in or to said strip to justify his said act of attempting to so shut up said passageway; and that his said attempt was a wrongful act and an unjust invasion of the rights of the plaintiffs as owners of lands and premises in said blocks 353 and 354 abutting on said passway, and threatened special injury and great and irreparable damage to them, for which they had no adequate remedy at law. That the plaintiffs, as such abutting owners, have the right to have said passway open and free from obstruction of any kind, and to have and continue in the free and unobstructed use of the same as a passway from North Street to the river, without let or hindrance of any kind on the part of the defendant."

The chancellor thereupon granted a perpetual injunction against defendant, Clay, enjoining him from obstructing the fifteen foot of ground referred to in any way or in any manner interfering with the free use of the same by plaintiffs as a passway, and gave judgment against him for costs. Clay appealed.

*John Hallum*, for appellant

The fee in the so-called alley or passway was in Clay. No dedication was ever shown, nor any *record* found of such dedication, by Ashley or Beebe or Crittenden, the original owners. Nor is any subsequent dedication to the public shown in any way. Their only contention is that they have acquired an *easement* by long user. In this they fail. The owner of a fee over which a highway passes retains the fee and all rights not incompatible with the public enjoyment, and when the highway is abandoned or lost he regains his original domain. Angell on Highways, secs. 301-304, 398, 399; 6 Mass. 454; 43 N. H. 356; 31 Vt. 336; 8 Allen (Mass.), 473; 15 Johns. (N. Y.), 448. The use of a private way by the public does not make it a public highway

without proof of *dedication* and acceptance.   147 N. Y. 139; 21
*Id.* 474.   The proof by those claiming the easement must be
clear and convincing.   Bigelow on Estoppel, 556, 557; 71 Iowa,
396, 400; 50 Ark. 716; 41 N. Y. 321; 115 U. S. 22, 26; 51
Mich. 575; 87 Ind. 570; 51 Wis. 232; 54 Vt. 92.   Where
it is plain that the representation has been acted upon, there is
no question that an estoppel arises.   Bigelow on Estop. 649;
117 U. S. 96-113; 17 Me. 132; Bigelow on Estop. 651-2.   Plats
and maps, followed by no dealing with the owner and no accept-
ance, are not sufficient.   69 Mass. 882; 98 Ala. 274; 8 Ind. 378; 42
N. J. L. 561; Jones on Easements, § 483.   The placing of
gates is evidence of an intention on the owner's part not to dedi-
cate.   63 Ark. 5; 7 How. U. S. 185; Elliott on Roads, 130.
A license to go on the land of another is a personal and revo-
cable privilege, conferring no estate.   Jones on Easements, § §
43, 64, 370.   Nor can the duration of a way be enlarged by im-
plication.   Jones on Easements, § 370.   A mere parol agree-
ment, though a consideration be paid, passes no estate.   129 N.
Y. 604; Jones on Easements, § 29.   See also on the question
of easements by user.   66 N. H. 386; Jones on Easements, § §
389, 179, 180, 181, 185, 84, 63, 64, 164; 19 Ark. 23; 144 Mass.
371; 91 Wis. 386; Washburn, Real. Prop. 629; 150 Mass. 19;
107 N. Y. 384.   Plaintiffs are estopped.   35 Ark. 376; *Id.* 293;
29 *Id.* 218; 37 *Id.* 47; 50 *Id.* 427; 52 *Id.* 207; 53 *Id.* 196; 55 *Id.*
296; 33 *Id.* 465; 50 *Id.* 116, 125; Bigelow, Estop. pp. 556, 557;
82 Ala. 102; 80 Ala. 331; 71 Iowa, 396.   A conveyance to a
municipal corporation of land outside the city limits is void.
Dillon, Mun. Corp. (4 Ed.), 565.   Mere *permissive* right never
ripens into a prescriptive right.   Jones, Easements, § 428.   See
also 33 Ark. 468 and 37 *Id.* 47.   To establish a highway by pre-
scription, there must be a public use, general, uninterrupted and
continuous for seven years, under claim of right.   47 Ark. 431.

*W. L. Terry*, for appellees.

1.   Clay was not the owner of the strip; hence was a tres-
passer as against the abutting owners, who were in the actual
enjoyment of the use of the invaded premises for at least 18
years.   8 Ark. 414; 45 *Id.* 345.

2.   The right of way was granted *by implication* in Clay's

deed to Farquahar. Note to 86 Am. Dec. 582; 53 Am. Rep. 554; 4 Kent, Com. 467; 49 L. R. A. 420.

3. (*a*) The strip became a public way by common law dedication. Wash. on Easements, 218; 2 Smith, L. Cas. 209. It may be done by writing, by parol, by acts *in pais,* or even acquiescence in the use. · 10 Peters, 712; Washburn on Easements, 205; 6 Pet. U. S. 440; *Ib.* 712; 1 L. R. A. 860; 58 Ark. 150.

The making of a plat and recording same may not bind him, but in selling to others according to said plat he creates an interest beyond his control. 3 L. R. A. 660; 1 *Id.* 859. The rights of a city may remain dormant until the use of the streets has become a necessity. *Id.* p. 860; 10 *Id.* 279; 72 Cal. 174; 4 N. J. Eq. 430; 32 Iowa, 630. An abutting owner necessarily enjoys certain advantages from an open street, which belongs to him. 10 L. R. A. 281; 57 Conn. 31; Angell on Highways, § 149.

(*c*) Dedication does not require the existence of a corporation. 33 N. J. L. 13.

(*d*) No acceptance by the city necessary. 12 N. J. 299; 97 Am. Dec. 702. But there was an acceptance by act of April 28, 1873. 58 Ark. 149; 62 Ark. 418; note 18 L. R. A. 510.

4. It became a public way by prescription and statutory limitation. 58 Ark. 437; 50 *Id.* 61; 60 Md. 74; *Id.* 79; 33 N. Y. Supp. 473; 86 Hun, 374; 37 Ala. 31; 19 Mo. App. 179; 47 Ark. 70; 36 Vt. 510, 511; 71 Miss. 640; 80 S. W. (Ky. Ct. App. April 21, 1904); 33 N. Y. Supp. 473; 86 Hun, 384; 8 Barb. 153; 37 Ala. 31. The burden was on Clay to show that the use was permissive, and not adverse. 22 N. Y. Supp. 990; 60 Md. 74; 37 Pa. St. 44; 42 *Id.* 114; 13 Atl. 81. See also 35 Vt. 514; 43 N. J. L. 621, 62 N. H. 372; 1 Allen, 248; 29 Vt. 44; 33 W. Va. 316, 317.

(*d*) The fact that defendant or other persons besides the plaintiff *also made use of the way* does not preclude their right by prescription. 13 Atl. 81; 13 Gray, 191, 192; 75 Am. Dec. 629.

RIDDICK, J., (after stating the facts.) This is an appeal by M. J. Clay from a judgment of the chancery court of Pulaski County enjoining him from putting a building upon or otherwise obstructing a strip of ground 15 feet wide lying between the land of plaintiff Penzel in block 354 and land owned by plaintiff O'Dougherty and plaintiff Mesler in block 353.

The plaintiffs claim that this strip of ground, which extends

north and south the full length of these two blocks, is a public alley, and constitutes an open public passway between the two blocks, while defendant Clay contends that it is in fact a part of block 354, and owned by him, and that such use as plaintiffs may have made of it was by his consent and permission.

There is some evidence tending to show that when the land covering blocks 353 and 354 was first laid off into blocks and lots à street about fifty or sixty feet wide was laid off between these two blocks, this street being an extension or what is now known as Izard Street. This land was at that time beyond the city limits. The defendant, Clay, afterwards became the owner of block 354, which lies west of block 353, and there is evidence tending to show that he claimed the strip of land in controversy as part of block 354, and that he had it inclosed.

But we think it is unnecessary to determine whether this strip was originally a part of Izard Street, and represents what the encroachments of abutting landowners have left of that street at this place, or whether it was originally a part of block 354, and as such was owned by Clay. We may, so far as this case is concerned, admit that this strip was a part of block 354, and owned by Clay. He in 1883 sold and conveyed to one Farquahar a lot 85 feet wide and extending across block 354 from North to South, leaving this 15 foot strip between the land sold to Farquahar and block 353. As Clay did not own block 353, and as the lot he sold to Farquahar in 354 extended completely across this block, thus separating this fifteen-foot strip from the other part of that block owned by Clay, it is difficult to see why Clay reserved such a narrow strip of the block unless he had doubts of his right to convey it. But, if he owned the entire block, he could subdivide it as he pleased, and we pass that point. He did sell the lot to Farquahar, cutting this narrow strip off from the other part of the block owned by him. Farquahar in 1888 sold to plaintiff Penzel, and he erected a fence along the east side of his lot extending across block 354 and adjoining the strip of land in controversy on the west. The parties who owned the land in block 353 east of this strip had a fence on this land. This left the strip of land in controversy inclosed on its east and west sides; on the north side it extended to the river bluffs; on the south side it opened into North Street, and the evidence

shows that since 1888 or 1889 it has been continuously used by plaintiffs as a passway between the lot owned by plaintiff Penzel in block 354 and the lots in block 353 owned by the other plaintiffs.

Whether these plaintiffs used this strip as a private passway or as a public alley is not very material, so far as this case is concerned; for a private way over the land of another may be acquired by adverse use in the same time that the public may acquire the right to a public highway by adverse user. In either case the use must be under a claim of right, and not permission. The way in either case must be used openly, continuously and adversely under a claim of right for the full period of the statute of limitations, which in this State is 7 years. 14 Cyc. 1145-1149; 22 Am. & Eng. Enc. Law, 1187; 23 *Ib.* 10; *Johnson* v. *Lewis,* 47 Ark. 66.

It is clear from the evidence that this strip has been continuously used by plaintiffs as an alley or passway for 10 or 12 years at least before it was obstructed by the defendant. The only question in dispute is whether that use was permissive, or adverse and under a claim of right so open and notorious as to put defendant on notice thereof.

The decision in this case turns then entirely on a question of fact. There is some conflict in the evidence, but it would serve no useful purpose to set it out or to go into a discussion of the same. Sufficient to say that we have not only read the arguments of learned counsel, but the evidence as set out in the transcript, and that we are of the opinion that it supports the finding of the chancellor that the strip of ground in controversy has for at least 10 or 12 years been used continuously, openly and adversely by the plaintiffs as an alley or passway between their lots, and that it has also been used more or less by the public and that the defendant Clay has now no right to occupy or obstruct the same with buildings or in any other way. The injunction to prevent this was in our opinion properly granted.

Judgment affirmed.