CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY *v.* THE STATE OF ARKANSAS.

4790 and 4791                                    275 S. W. 2d 646

Opinion delivered February 21, 1955.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Tom Gentry,* Attorney General, *Thorp Thomas,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. The prosecuting attorney filed information against Chicago, Rock Island and Pacific Railroad Company in two cases, alleging violation of § 1 of Act 67 of 1913: "No railroad company . . . operating any yards or terminals in the cities within this state where switching, pushing or transferring of cars are made across public crossing within the city limits of [such] cities shall operate their switch crew or crews with less than one engineer, a fireman, a foreman, and three helpers." Ark. Stat's § 73-726.

In Case No. 4790 the company is charged with having operated a switch train May 15th, 1954, with a crew deficient in numbers ". . . in a yard located in the City of Little Rock where switchings are made across a public crossing". The trial was without jury, resulting in a fine of $50. The defendant's plea of not guilty is predicated upon its contention that the crossing is not of the public character embraced within the language of Act 67.

The operations complained of are within company owned property known as Biddle Yard. It is a coincident that this yard was established in 1912—a year before the legislative Act requiring a six-man crew was promulgated. The state does not question accuracy of appel-

lant's factual presentation, but only the conclusions. The following is taken from appellant's brief:

"When Biddle Yard was established it was in a swampy area south of the city. Heavy earthen fills were required before a part of the acreage could be made usable. Construction of the Yard isolated several hundred acres of low-lying land bounded on the east, south and west by Fourche Creek and on the north by the Yard itself. Formerly a bridge had spanned Fourche Creek, but this fell into disrepair and was either washed or carried away.

"All of Biddle Yard is wholly-owned property of the appellant. There are no platted or dedicated streets or roads within its confines. At the time of the construction of Biddle Yard the entire property was without the limits of the City of Little Rock. Shortly after the Yard was built the area was annexed to the City.

"In the early days employees of the railroad were carried to Biddle Yard by a shuttle train. A number of years later the Biddle street car line was extended to the entrance of the Yard. Sometime in the mid-1920's the defendant constructed a dirt road from the east entrance of the Yard to the Yard office, a two-story brick building in which a number of employees worked, approximately 300 yards westward. The road was built in order to afford fire protection to the many improvements of the appellant within the Yard, for the convenience of its employees in coming to and from work and for delivery of materials to the appellant.

"In the ensuing years, with increased numbers of automobiles and trucks, the road was extended westward in a meandering fashion over the caboose track and the inbound lead track to areas where employees parked their cars and reported for work within the Yard. Sometime in the late 1920's members of the public began to walk, drive wagons and operate automobiles over the rip track lead at the southern edge of the Yard, approximately one-half mile west of the east end of the yard. These are the three crossings under consideration. There

was testimony that the only means of ingress and egress to the cut-off area of several hundred acres was through Biddle Yard.''

In summarizing, appellant shows that there are no dedicated streets or roads near any of the crossings where violations are alleged to have occurred. The crossings are on the defendant's property, and the rail line was built or extended for accommodation of its employees or to facilitate fire fighting. No statutory crossing signs or signs of any description are maintained, and land lying beyond the track is wild and unimproved with the exception of two clearings that were placed in cultivation for the first time in 1954. Livestock has foraged in the area.

Testimony of witnesses used by appellant was to the effect that irregular use is made of the crossings by persons who are not molested because their activities do not inconvenience railroad employees. The company maintains an ice house and at times receives commodities that are delivered by tradesmen. The drivers of wagons or automobiles found on the premises are sometimes questioned regarding the nature of their business, but none of those permissively using the property has asked for the privilege. On the contrary the implication seems clear that because of the infrequent use made of the property by outsiders no one thought about the matter one way or the other.

Since there is no contention that the crossings were incidental to highways that had been dedicated or thoroughfares so generally used that their public character became self-evident, prescription is relied upon to clothe them with the attributes of ''public crossings'' as contemplated by the General Assembly when it adopted the measure now sought to be invoked.

A way by prescription may be established when adverse use by the public has continued for a period of seven years or more, ''from which use arises a presumption of a reservation or grant, and an acceptance thereof, or that it had been laid out by the proper authorities, of

which no record exists." *St. Louis Southwestern R. Co.* v. *Christian,* 164 Ark. 65, 261 S. W. 297, 262 S. W. 29. In the case just cited Judge McCulloch held that a pathway was not contemplated by the lawmakers in prohibiting "any public highway, street, alley, or farm crossing" from being blocked by a train for more than ten minutes.

A somewhat broader definition was mentioned by Mr. Justice Battle, *Arkansas River Packet Co.* v. *Sorrels,* 50 Ark. 466, 8 S. W. 683. In quoting from Kent's Commentaries, v. 3, p. 432, there is this comprehensive statement: "Every thoroughfare which is used by the public, and is, in the language of the English books, 'common to all the king's subjects,' is a highway, whether it be a carriage way, a horse way, a footway, or a navigable river."

Mr. Justice McHaney made use of the Sorrels case (*Canard* v. *State,* 174 Ark. 918, 298 S. W. 24) in affirming a conviction under Act 250 of 1923. The Act denounced as a misdemeanor the conduct of any person who drove an automobile, truck, or motor driven vehicle "on any of the public highways of this state or over or upon any of the streets of any city or town . . . while in an intoxicated condition". The defense was that the offense was committed "in the fair grounds, and not on any of the public highways of the state, or upon any of the streets of any city or town."

The court's comment respecting applicability of the law was: "We are of the opinion that the driving of a car, while intoxicated, over the passageway, through the gates of a fair ground and over the roadways provided therefor within the fairgrounds, falls within the prohibition of the statute, and that the appellant would be guilty of the offense charged if the proof showed the offense to have been committed within the fair ground alone."

None of our cases gives a direct answer to the problem before us, and the decisions from other jurisdictions must, of course, be considered in connection with the statutes of that state.

It will be conceded that the enactment of 1913, while directly affecting the public safety, is highly penal and the construction given it should not be an enlargement upon the legislative intent—that is, an intent to safeguard the public.

We are dealing exclusively with roads leading to and across railways entirely within appellant's area of activity, on property it owns and uses for particular purposes wholly disconnected with the public's interest except to the extent that the railroad is a common carrier and yard activities enter into the general scheme, hence proof of user alone is insufficient to establish it as a public highway, for the activity ". . . must be associated with some act showing use to be claimed as a right, hostile and independent of the will of the owner, such as reparation or assuming the control of the road in some ostensible manner". See *Merritt Mercantile Company* v. *Nelms,* 168 Ark. 46, 269 S. W. 563. Judge Wood's comment was that there was nothing in the testimony to show that the public was claiming the roadway adversely.

The distinction between rights of particular persons to privately use a pass-way over another's land, as distinguished from the public at large, is discussed in *Clay* v. *Penzel,* 79 Ark. 5, 94 S. W. 705. "A private way over the land of another," said Judge Riddick, "may be acquired by adverse use in the same time that the public may acquire the right to a public highway by adverse use. In either case the use must be under a claim of right, and not permission. The way in either case must be used openly, continuously and adversely under a claim of right for the full period of the statute of limitation."

The *Clay-Penzel* case was cited in *Medlock* v. *Owen,* 105 Ark. 460, 151 S. W. 995, *Harrison* v. *Harvey,* 202 Ark. 486, 150 S. W. 2d 758, and in other decisions. In *Pierce* v. *Jones,* 207 Ark. 139, 179 S. W. 2d 454, stress was placed upon the rule that where the public used a road through open and unfenced lands—there having been no action of the county court creating it, and [where] there was no official attempt to work it or to exercise authority over

it as a public highway, "a presumption arose that use of the way was not adverse to the [land] owner and that his consent would be implied."

In the case at bar there is no substantial evidence to dispute appellant's testimony that use of the crossings began permissively. In the absence of evidence that such permissive use became hostile and that those who utilized the facilities did so in derogation of the railroad company's claim that the territory involved was private, it must be held that Act 67 of 1913 was not violated. This results in a reversal of the judgments and dismissal of the cause.

---

### APPEAL NO. 4791.

The information in this case charged the railroad company with violation of the same statute and section by conducting switching operations with an insufficient crew over the so-called Sweet Home Crossing. The highway is No. 65 and no question as to its public character is involved.

The defense is that watchmen are posted at the crossing, charged with a duty to give warning of an approaching train. The service is maintained during a 24-hour day.

The defendant thinks the legislative authority could not have had in mind a situation of this kind when Act 67 was passed in 1913. Very probably it did not. But the law does not contain an exception to meet the extraordinary situation encountered here, and we are powerless to read such a provision into it. Affirmed.

MR. JUSTICE MILLWEE dissents from the reversal in No. 4790.