SALZER *v.* BALKMAN, TRUSTEE.

5-2502                                      351 S. W. 2d 422

Opinion delivered November 27, 1961.

*Hardin, Barton & Hardin,* for appellant.

*J. H. Evans,* for appellee.

CARLETON HARRIS, Chief Justice. This is an appeal from the Logan County Chancery Court, Southern (Booneville) District, wherein appellants, Frederick Salzer and Clara Joan Salzer, seek reversal of a decree of that court entered on February 3, 1961, directing appellants to remove a certain fence, which appellees contend was placed in a public road, and restraining the Salzers from constructing any other fence "any closer to the road than a line parallel to the present fence and seven feet to the west thereof." The evidence reflects that appellants purchased the land, over which the road in question is located, in 1949, and in March, 1960, Salzer replaced an old fence which ran parallel to the road, with

a new fence seven feet to the east. For reversal, appellants principally argue that the use by the public of the road involved was permissive, and that no rights were ever acquired by prescription. It is also argued that the seven-foot strip in question is not a part of the road; further, that the county had abandoned any right it had to the road involved.[1]

The road in question was principally used by those traveling to Highway No. 109, or to Ellington Cemetery, a community cemetery near the town of Magazine (though there was also evidence that it was used as a "lover's lane"); it lay over unenclosed ground, and from the evidence, had apparently been used by the public for a long period of years prior to 1949. In fact, there is no dispute on this point. Salzer, who, as heretofore stated, purchased the property in 1949, contends that the use by the cemetery frequenters and others, over this long period of years, was entirely permissive, and several cases are cited to the effect that the use of unenclosed lands for passage is presumed permissive and not adverse. See *Boullioun* v. *Constantine*, 186 Ark. 625, 54 S. W. 2d 986; *Bridwell* v. *Arkansas Power & Light Co.*, 191 Ark. 227, 85 S. W. 2d 712; *Brumley* v. *State*, 83 Ark. 236, 103 S. W. 615. It is true that this is the general rule, but even the cases cited mention exceptions. For instance, in *Boullioun*, the Court said:

"Cases might, and do, arise where those using a private way over uninclosed lands may, by their conduct, openly and notoriously pursued, apprise the owner that they are claiming the way as of right and thus make their possession adverse, but there were no such circumstances in this case, and therefore the user must be deemed to have been by consent of the owner, and, being permissive, could not ripen into a legal right."

Also, in the *Brumley* case, this Court said:

---

[1] Point IV asserts that appellees have no right of necessity to the road in question, but appellees make no such contention, and that point is not at issue.

"They were dirt roads leading through unfenced and wild lands, and the mere fact that the public may use such roads leading through the open forest for seven years or over does not as a rule make them public roads. When the public use a road running through open and unfenced lands without any order of the county court making it a public road *and without any attempt to work it or exercise authority over it as a public highway,*[2] the presumption is that the use of the road is not adverse to the rights of the owner of the land, but by his consent." The above sentence is italicized because in the case before us, while no order was ever entered establishing this road as a county road, the evidence does establish that the road was maintained over a long period of years by the county. This maintenance apparently was regular and consistent, rather than occasional; in fact, so much so, that appellant Salzer, himself, referred to the road as a county road. From the testimony:

"Q.   You knew this county road was there when you received the deeds?

A.   Yes. At the time I received the deed there was just one road.

Q.   And that road was worked by the county?

A.   Yes.

Q.   You saw the county work that road?

A.   Yes.

Q.   Did you know where that road was located with reference to the property you bought?

A.   Yes, sir.

Q.   You knew that the old county road went across part of the property that you received a deed to?

A.   Yes."

---

[2] Emphasis supplied.

That a public way by prescription may be established over unenclosed lands is evident by our decision in *Martin* v. *Bond, Trustee,* 215 Ark. 146, 219 S. W. 2d 618. There, these same cases were cited that are presently cited by appellee, but this Court held that the presumption of permissiveness is not conclusive, and found that the evidence in that case established the public way by prescription. The facts in *Craig* v. *O'Bryan,* 227 Ark. 681, 301 S. W. 2d 18, cited by appellants, are far different from those in the case at bar. In that case, those claiming the right to use a road had conferred with Craig relative to whether they had the right to use same; also, we held the evidence did not establish the roadway to be a public road, and it was pointed out that most of the people asserting a right to use the road had not used same for a sufficient period of time to establish their adverse rights. Here, in addition to the county maintenance, it appears that the public asserted a *right* to use the road in question. Prior to 1949, it would seem that this road was used exclusively for entrance to the cemetery by funeral processions, and those visiting graves of loved ones or friends. Noteworthy evidence that the public had acquired a prescriptive right is contained in the testimony of Salzer himself. Following the last question and answer heretofore quoted, Salzer was asked: "And you recognized the right of the public to use that road?" The answer was, "Yes."

Nor can we agree that the road had been abandoned. This contention by appellant is based on the fact that a new road was constructed by the county, over which people may also reach the cemetery. This road was built along about the same time Salzer acquired the property in question, and during the same period of time that a new portion was added to the cemetery. This part of the cemetery is north of the old cemetery and is divided by the old road, here in controversy. The proof on the part of appellees reflects that after the new road was built, the public continued to use the old road, much as in the past, and the county continued to maintain it. People

still traveled to the cemetery over the old route, and cars parked on each side of the road at funerals, still leaving space for other cars to traverse the disputed way. This newer road was built in 1949 or 1950, but the fence was not moved until 1960. There is nothing in the record to establish that the later road was constructed to be used *in lieu* of the original road; nor is there evidence that it was constructed pursuant to the application of the public for a new road, made because of a threat to fence off the old one. Of course, Salzer did not move the fence until ten years after the new road had been constructed. In fact, Logan County intervened in this action, asserting:

"That the road described in the complaint of plaintiffs, and which is the subject matter of this action, has been established for at least the past fifty years by prescription and the general public has used said road continuously for said period of time under a claim of right; that during the past fifty years said road has been worked and maintained by the County of Logan, State of Arkansas, as a public county road."

Further, the fence erected by appellants was "interfering with the right of the public to use said road." It is apparent that the facts herein are far different from those set out in *Holt* v. *Crawford County*, 169 Ark. 1069, 277 S. W. 520, cited by appellants.

Appellants argue that the seven-foot strip involved is not a part of the road; rather, they contend that the seven feet is only a ditch to the west of the road, which was filled with beer cans and debris, and very much needed "cleaning up." The testimony was in conflict as to the prior use of this seven feet as a road, and the photographs offered as exhibits do not make the matter clear. J. W. Balkman, who testified on behalf of appellees, stated that the new fence "was in the road proper", and other witnesses testified that the construction of the fence had considerably shortened the width of the road, though this was disputed by witnesses on behalf of appellant. This leaves the matter purely a question of

fact, but aside from that, it does appear, at any rate, that the fenced portion served as drainage for the road. Some of appellant's witnesses concurred in this view. From the testimony of Laddie Hopkins:

"Q. You talked about a ditch on the west side of the road?

A. Yes.

Q. That was not part of the roadway but it was a ditch to carry the water?

A. That was what it was put there for.

Q. Is that the ditch that carried the water off that you are talking about being grown up?

A. Yes. It grew up every year with weeds and bushes and such.

Q. And it carried the water on that side of the road?

A. Yes."

We think the evidence in this case establishes a prescriptive right to use of the ditch as well as use of the road. Though we need not go so far in this instance, it is interesting to note there is authority that "when a road is established by prescription, the right is not limited by the beaten path used, but may be made to include sufficient land for drainage ditches, repair, and the convenience of the traveling public." *Haby* v. *Hicks,* 61 S. W. 2d 871 (Texas).

Some space is devoted in the briefs to the question of whether the road in question was a county road, but we need not discuss that issue, since the determinative point is whether the *public* had acquired a right to the road by prescription.

The Chancellor, who heard the witnesses testify, and was thus in a more favorable position to evaluate their testimony, found:

"The old road was never closed or abandoned at the points involved in this action, but was in uninterrupted, continuous service by anyone who cared to use it for access to the cemetery, for parking, for a lover's lane, or for access to the hayfield gate of the defendants.

\*  \*  \*  \*

The Court finds that the semi-circular drive through the cemetery is now and for many years past has been a 'Public Road'. This road includes the drainage area on each side of the road. Both the road, the drainage area and the fence line have become established and defendants had no right to move the fence at the points in question any nearer to the road than where it had been maintained for more than 50 years past immediately prior to the acquisition of the land by the defendants, that space between the old fence line and the crown of the road being a part of the public road."

We are unable to say these findings are against the preponderance of the evidence.

Affirmed.