### SCAIFE *v*. COLEMAN.

5-3505                                               389 S. W. 2d 884

Opinion delivered May 10, 1965

*W. K. Grubbs, Sr.*, for appellant.

No brief filed for appellee.

PAUL WARD, Associate Justice. The principal question for decision is whether appellees (Otto Coleman and Ray Eisele) have a right, acquired by prescription, of ingress and egress to and from their property over lands belonging to appellant (Mrs. Jane Scaife). Tom Dixon, a lessee, has no interest in this litigation and we will hereafter refer to Mrs. Scaife as appellant. A summary of the relevant and undisputed facts is set forth below.

Appellant owns (among other lands) the north one-half of the northwest quarter (80 acres) in Section 10 which we will hereafter, for clarity, refer to as tract

"A". She also owns the land (with certain exceptions immaterial here) adjoining on the east and extending approximately three-fourths of a mile to the levee on the west side of the Mississippi River, which land we will, for clarity, refer to as tract "B". Appellees own the land adjoining tract "A" on the north, being in Section 3, and they also own land in the south portion of the northeast quarter of aforesaid Section 10. All the above described property lies in Township 18 south, Range 1 west. The alleged road in dispute runs north and south on or near the line dividing tracts "A" and "B" for a distance of approximately one-fourth of a mile.

*Pleadings.* (Petition) On May 9, 1963 appellees filed a petition in chancery court against appellant which contained, in essence, the following allegations (after first setting forth the locations and ownerships of the land): The road (as above described) has been openly, continuously and adversely used by petitioners and the public generally under claim of right for more than seven years, and petitioners have "acquired a prescriptive right that is absolute and vested in the petitioners and the public generally". This road is the only accessible way to the property being farmed and used by petitioners, and appellant, on November 15, 1962, obstructed the road and made it impassable to traffic, causing damage to petitioners in the amount of $7000. The prayer was that appellant be required to remove the obstruction, that she be permanently enjoined from interfering with the use of the road by petitioners, and for damages.

(Answer) Appellant denies the existence of any road such as claimed by appellees; denies that appellees or any other person has been adversely using any road across her land; denies that any person has acquired any prescriptive right to any way across her land; denies she has obstructed any road on her land; and, denies appellees have suffered any legally compensable damages. By way of counter-claim, appellant states there is a turnrow across tract "A" which her tenants and appellees have used at times as a road, and that appellees had dug ditches along the turnrow and placed gravel

thereon, causing her damage to the extent of $200. The prayer was that appellees' petition be dismissed and that she be given $200 damages.

*Findings.* After a rather lengthy hearing, the chancellor found (among other things):

"There was never a fence along the east side of the Scaife place. There was a turnrow, road or passageway . . . either all located on the Scaife place or on the line dividing the two tracts [A and B]. . . . This route was a turnrow for the Scaife place in those years when the rows or cultivation ran in that direction, but it was also, at all times, a way, the only way, a way of necessity, established, accepted and acquiesced by the family, as a means of ingress and egress to the Coleman and Scaife places for the family and their tenants.

. . . This route has been used by the several owners of the Coleman place for some 25 years or more. The owners of the Scaife place allowed the way to pass from a family way to one used by strangers without objection and seemingly with approval. During the past quarter of a century, the owners of the Scaife place, despite the several different owners of the Coleman place, have never voiced any objection to the use of the route as a means of ingress and egress. They have by their non action and acquiescence through the years led the several owners of the Coleman place to believe and rely on their right to use said way. . . ."

Based upon the above (and other) findings the trial court decreed appellees had acquired, by prescription, a private easement over the lands of appellant and described the road in detail as set out in the record at page 35. The trial court also gave appellant judgment for $200 against appellees and appellees judgment for $94 against appellant.

On appeal appellant urges four separate points which may be summarized as follows: *One,* There is no evidence to support the findings and decree of the trial court; and *Two,* There is no evidence to support the $94 judgment.

430

*One.* We have many times held, under various factual situations, that a right of way across the land of another may be acquired by continual usage for a large number of years. See *Martin* v. *Bond, Trustee,* 215 Ark. 146, 219 S. W. 2d 618; *Fullenwider* v. *Kitchens,* 223 Ark. 442, 266 S. W. 2d 281; *Chicago, R. I. & P. R. R.* v. *State of Arkansas,* 224 Ark. 622, 275 S. W. 2d 646; *Salzer* v. *Balkman, Trustee,* 234 Ark. 209, 351 S. W. 2d 422; and *Duncan* v. *Manes,* 235 Ark. 377, 360 S. W. 2d 128.

There can be no doubt that the findings of the trial court copied above support its conclusion that appellees have acquired the prescriptive right of ingress and egress over the land of appellant. A careful search of the record convinces us that the weight of the evidence supports said findings. Several witnesses testified they had known the road in question for as long as twenty years (and two as long as forty years) and that it had been in constant use by the general public and particularly by tenants who lived on and worked the lands now belonging to appellant and appellees. In addition to the above, the General Highway Map of Chicot County (1958 edition) prepared by the Arkansas Highway Commission shows an unimproved dirt road running south from appellees' land in Section 3, and the same thing is shown by a map of the Mississippi River Commission prepared by the Corps of Engineers, U. S. Army. We see no merit in appellant's contention that the alleged location of the road in question was not proved. As was stated in *Westlake* v. *Duncan, Dieckman, and Duncan Mining Co., Inc.,* 228 Ark. 336, 340, 307 S. W. 2d 220, the weight of the testimony "shows without doubt that there was only one road which all the witnesses were talking about and that is the one involved here". There is, however, some testimony that more than one road (south of the one in dispute) was used from time to time.

*Two.* We are unable to say the weight of the testimony does not support the trial court's award of $94 to appellees against appellant. There is testimony in the record showing appellant had obstructed the road so that it would have to be repaired before it could be used, and

that it would cost this amount to make the needed repairs. We think the trial court properly held it was the responsibility of appellant to make (or pay for) said repairs. As pointed out above, the trial court also required appellees to pay appellant $200 for damages they did to the road.

Affirmed.