LUCILLE DUKE ROCHELLE ET AL *v.* BETTYE PILES

5-4468                                      427 S. W. 2d 10

Opinion delivered April 15, 1968
[Rehearing denied May 21, 1968.]

*Bethell, Stocks, Callaway & King,* for appellants.

*Donald Poe,* for appellee.

LYLE BROWN, Justice. Mrs. Bettye Piles, appellee, filed this suit to establish her right to the use of a driveway between her home and the home of appellants, Mrs. Lucille Duke Rochelle and Mrs. Clyde Duke. The trial court held that Mrs. Piles had acquired an easement by right of prescription. Mrs. Rochelle, the fee owner of the disputed strip, challenges the sufficiency of the evidence. Mrs. Duke, mother of Mrs. Rochelle, was apparently made a party because of her having occupied the property since 1884.

The parties reside in Waldron on Old Danville and Waldron Road which runs east and west. Mrs. Piles and Mrs. Duke, both widows, have been neighbors since 1924. Running north and south, and near the western edge of the Rochelle property, is a driveway which provides access to both homes. The chancellor found, and we think correctly so, that prior to the turn of the century a public way existed, running from Danville Road north and between the litigants' properties. Farmers used the lane to haul their cotton to a cotton yard located north of the present location of the two homes. The cotton yard was abandoned, apparently around 1912, and a fence was placed across the north end of the lane. The location of the driveway in dispute is identical with the south end

of the cotton yard road.

Mrs. Duke's father built a home on the Duke property around 1884 and Mrs. Duke has lived there for the past 82 years. For many years the lane was fenced on both sides and down to Danville Road. As far back as she can remember, the lane was used by her family and by the Piles family and their predecessors in title. That was true until 1966 when Mrs. Duke caused the lane, or driveway, to be enclosed within the bounds of the Duke-Rochelle property. That action precipitated this lawsuit.

Mr. and Mrs. Piles obtained title to their property in 1924. Their predecessors in title had lived on the property since at least 1907. The only access to their home has been the disputed driveway. Mrs. Piles testified their vendor represented that the driveway was included in their purchase. (A survey was introduced to sustain that contention but we think the court was correct in holding the true survey line to be just west of the driveway.) Mrs. Piles testified that she had no knowledge of any claim by Mrs. Duke or Mrs. Rochelle to the driveway until the present dispute arose. Over the years the Pileses made substantial improvements to their property. A patio, garage apartment, and a tenant house—all serviced by this driveway—were constructed. At their expense the Pileses replaced a wooden culvert, asphalted the driveway in about 1952, and in 1960 they had it seal-coated.

On the other hand, Mrs. Duke testified positively that to her personal knowledge every owner of the Piles property—including Mr. and Mrs. Piles—sought and obtained permission to use the driveway. She was corroborated by her daughter, Mrs. Rochelle, as to these occupants of whom she had recollection. They recited a number of instances in which both Mr. and Mrs. Piles tried to prevail on them to sell them the driveway property. Mrs. Piles denied knowledge of any such conversations.

In the transcript are two depositions which, if admissible, would support appellants' theory of permissive use. We are convinced that the trial court never saw those depositions. Counsel for appellant thinks we should consider them and counsel for appellee made no objection. Here are the chronological facts pertinent to the depositions:

1. At the close of the testimony on June 17 it was stated that the evidence was concluded "except for two depositions to be taken by agreement."

2. On June 22 the trial court entered his findings which contain this statement:

"On the 13th day of June, this cause came on and was presented for hearing, and after hearing of the evidence and proof submitted on June 13, 1967, the cause was continued to June 17, 1967, for further proof and hearing, and was then continued, after June 17, 1967, until June 22, 1967, for the filing of depositions of the defendant; and on this 22nd day of June, 1967, the matter is finally submitted to the court. . ."

3. Subsequent to the entry of final judgment on June 22, two depositions were filed, one on June 23 and the other on June 28. One was taken in Texas on June 21, and the other in California on June 26.

4. The depositions were inserted by the clerk in the transcript and abstracted.

In the first place, we look to the wording of the final judgment and point up the phrase "and was then continued until June 22 for the filing of depositions." The only logical interpretation of the phrase is that the trial court allowed five days—from June 17 to June 22—to file the interrogatories which were being taken by agreement. Nine months had elapsed since the first

hearing in the case and June 22, so ample time had been available for the taking of depositions. Counsel knew, or should have known, that the trial court had not considered the depositions. Upon ascertaining that fact a motion should have been filed to set aside the judgment and reconsider the case in light of the depositions filed subsequent to the decree. There is nothing in the record to show why that was not done and we cannot consider any reasons advanced which are extraneous to the record. That is particularly true in light of the trial court's statement that the cause was continued until June 22 "for the filing of depositions."

We conclude that counsel acted in utmost good faith; in fact, the discrepancy between the dates of the decree and the filing of the depositions probably was not called to their attention. However, we are concerned here with a precedent that may well come back to haunt us, that is, *the evaluation by this court of testimony that was never presented to the trial court*. This court has held that an agreed statement of facts merely filed with the clerk cannot be considered here. *Evans* v. *Davidson*, 207 Ark. 865, 180 S. W. 2d 127 (1944). In *Morrison* v. *Heller*, 183 F. 2d 38 (1950), appellants placed additional documents in the record which were not considered by the trial judge. On appeal, the documents were ordered stricken on the ground that their acceptance would make a complete new trial. "Litigation would otherwise be interminable," said the court. The case of *Foster* v. *Graves*, 168 Ark. 1033, 275 S. W. 653 (1925), was by this court reversed and dismissed. On rehearing appellee filed an affidavit of one of appellant's material witnesses, in which the witness repudiated his testimony. This court said the affidavit could not be considered to determine the correctness of the chancery court's decision—"the record made in the court below must furnish the sole test." By analogy, the two depositions were never considered by the trial court in making its decision; therefore we should not consider them in passing on the merits of the case.

We revert briefly to the testimony in the case. A host of witnesses were called. Surveyors testified about the land lines but that testimony need not be summarized. A number of witnesses testified about the long and continued use by both families, their tenants, service men, visitors, deliverymen, and friends. In fact appellants concede that ''both of the parties, their friends and tenants have used the driveway without interruption for forty years until just prior to the commencement of this action.'' However, appellants contend that a public easement was not shown and ''it is therefore incumbent upon the plaintiff to show an adverse and hostile use by herself or predecessor in title. This we submit she has not done.'' The chancellor discounted the theory of mere permissive use and held that Mrs. Piles and her predecessors in title had become vested with an easement by right of prescription. This brings us to the legal requirements for the establishment of a prescriptive easement by Mrs. Piles over the driveway.

This court has many times dealt with the acquisition of passageways over land. The general rule is that a passageway over unenclosed lands is presumed to be permissive. On the other hand, as said in *Fullenwider* v. *Kitchens,* 223 Ark. 442, 266 S. W. 2d 281 (1954: ''This court, however, in dealing many times with acquisition of passageways over land, has recognized what might be deemed a variation or exception to the rule before mentioned.'' One exception, which we consider here applicable, was stated in *McGill* v. *Miller,* 172 Ark. 390, 288 S. W. 932 (1926):

''It is true that the use originated as a permissive right and not upon any consideration, but the length of time which it was used without objection is sufficient to show that use was made of the alley by the owners of adjoining property as a matter of right and not as a matter of permission. In other words, the length of time and the circumstances under which the alley was opened were sufficient to

establish an adverse use so as to ripen into title by limitation. *Clay* v. *Penzel,* 79 Ark. 5, 94 S. W. 705; *Scott* v. *Dishough, supra; Medlock* v. *Owens,* 105 Ark. 460, 151 S. W. 995.''

In the *Fullenwider* case, the Kitchens farm was located off the public road. For 35 years the occupants of the Kitchens lands traversed a passageway across the Fullenwider lands to get to the highway. That use started as a permissive one but the continuous use of the passageway for so long a period by all who had business at the Kitchens farm created a presumption that the usage was adverse. That usage was held to have ripened into a vested right.

In *McGill* v. *Miller, supra,* the parties lived on different lots in the same block in Little Rock. The only convenient means of access to their respective homes was an alley. The alley was not dedicated; it consisted of a strip back of the properties which the owner originally kept free of obstructions. This court held that since the neighbors had used the alley for some nineteen years as their only means of ingress and egress, the original owner had no right to close the strip and prevent its use.

Some of the other cases in which the factual situations and the court's conclusions comport with the chancellor's ruling in this instance are *Salzer* v. *Balkman,* 234 Ark. 209, 351 S. W. 2d 422 (1961); *Scaife* v. *Coleman,* 239 Ark. 427, 389 S. W. 2d 884 (1965); and *Barbee* v. *Carpenter,* 223 Ark. 660, 267 S. W. 2d 768 (1954).

On the question of permissive use, the facts are concededly close. The testimony on each side was as opposite as the poles. When viewed numerically it may be meritoriously argued that it favored appellants. On the other hand, an experienced chancellor saw and heard the witnesses in an extended proceeding. In view of his

advantageous position, and when considered in light of all the circumstances, we cannot say his findings were against the greater weight of the evidence.

We find no merit in appellee's argument that the true dividing line on the east is near the center of the driveway. We also agree with the chancellor that the portion of the old lane north of that area which had been maintained and blacktopped has long been abandoned.

The decree of the chancellor is in all respects affirmed.

HARRIS, C. J., and GEORGE ROSE SMITH, J., dissent.

GEORGE ROSE SMITH, Justice, dissenting. I would reverse the decree on the basis of the two depositions that the majority have not seen fit to consider.

Those depositions were taken by agreement. They are properly certified by the clerk of the trial court as part of the record. They have been abstracted by the appellants, along with the other testimony submitted for our consideration. The appellee has made no objection to the two depositions. Yet the majority, on their own initiative, raise a technical objection to that part of the record and go on to reach a conclusion that would seem to be unwarranted if all the proof before us were taken into account.

The situation, which was explained during the oral argument, is not apt to arise again. The chancellor, Judge Paul X. Williams, was nominated to a federal judgeship before he had reached a final decision in this case. In the course of clearing his docket he filed his findings of fact and conclusions of law on June 22 and directed counsel for the prevailing party to prepare a precedent for a final decree, which was also signed on June 22. On the next day, June 23, Judge Williams was

sworn in as a United States district judge. See 266 F. Supp. p. xv, footnote 11. The parties went ahead with the taking of the depositions and eventually filed them, without objection, for inclusion in the record.

It will be seen that Judge Williams faced something of a dilemma: Either he could leave to his successor an undecided case in which Judge Williams himself had heard the oral testimony, or he could decide the case himself without having seen the depositions that were being taken. He chose the second course, no doubt in all good conscience and with the realization that the missing depositions might ultimately tip the weight of the evidence against his decision.

I should emphasize that for us to consider the two depositions would *not* set a precedent requiring us to consider in every case proof that had not been seen by the trial judge. The precedent would be controlling only in a case similar to the one at bar. Should that unlikely situation ever confront us again, I would be perfectly willing to adhere to the rule of taking into account all the proof that counsel have seen fit to include in the record. That course merely puts the merits of the case above a technical point of no importance.

HARRIS, C. J., joins in this dissent.